85 So.2d 600 (1956)
Rochelle PEGUENO, Appellant,
v.
The STATE of Florida, Appellee.
Supreme Court of Florida. En Banc.
February 8, 1956.
Rehearing Denied March 14, 1956.
*601 Branch & Goff, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., and Bart L. Cohen, Asst. Atty. Gen., for appellee.
ROBERTS, Justice.
In this appeal from a judgment of conviction in a criminal case, the controlling question is whether the evidence introduced by the State in support of its charge was obtained by an unlawful search and seizure. The arresting officer who made the search was armed with a search warrant; but for reasons not necessary here to relate the case must be decided as though the appellant was arrested and a search made of his premises without a warrant. If the arrest was lawful, then the search was lawful under the well-settled rule that a search may be made as an incident to a lawful arrest. Brown v. State, Fla. 1950, 46 So.2d 479, and cases there cited. And, in our opinion, the circumstances here were such as to justify the officer in arresting the appellant without a warrant.
The appellant was charged with a violation of Section 562.32, Fla. Stat. 1953, F.S.A., which denounces the "removing, depositing or concealing" of untax-paid liquor. It is settled that "moonshine" whiskey is within the terms of the Act. State v. Ellis, Fla. 1955, 78 So.2d 729. The arresting officer was a supervisor of the State Beverage Department. He had been advised by an agent of the Federal Alcoholic Tax Unit that a moonshine still was in operation on the premises occupied by the appellant. He went to the premises with his informant and smelled the odor of fermenting mash. He testified that he had had experience in arresting defendants in the moonshine business; that fermenting mash has a distinct odor; that "there is nothing else in the world I have ever encountered that smells like it." It seems to us that he was well qualified as an expert in this field and that the trial judge (who tried the case without a jury) had every right to believe his testimony in this respect. He said that after he got up to the house, the defendant came out on the porch; that he told the defendant *602 he was an agent of the State Beverage Department and wanted to search the premises; that the defendant said, "Help yourself. Go right ahead;" that he asked the defendant how many barrels he had, and the defendant said he had "right at 100 barrels"; that after the defendant admitted he had a still, he arrested him, and that he then made a search of the premises, finding the evidence which is here claimed to have been illegally obtained.
We think that, in all of these circumstances, the arresting officer had "reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it", Section 901.15(3), Fla. Stat. 1953, F.S.A., so as to justify his arrest of defendant without a warrant. And since the arrest without a warrant was lawful, it follows that the search made incidental thereto was of the same character, even though the search warrant could not be relied upon at the trial in support of the search. Brown v. State, supra, 46 So.2d 479. As stated in Melton v. State, Fla., 75 So.2d 291, 295:
"The fact that at the time of such arrest the arresting officer may have in his hands an invalid search warrant will not vitiate a search made under such conditions, for the search will have been made under lawful circumstances authorizing a search as incidental to a lawful arrest without warrant, and his possession of the invalid search warrant will be without legal significance."
We are cognizant of the fact that this court has held that the odor of whiskey emanating from a truck is not sufficient to constitute probable cause that the truck is engaged in the transportation of untax-paid liquor, Byrd v. State, Fla., 80 So.2d 694, 698. But in that opinion the court, speaking through Mr. Justice Hobson on petition for rehearing, pointed out that there is a distinction between "the sufficiency as probable cause of odors of whiskey in relation to the crime of possession of untaxpaid liquor, and the odor of whiskey mash in relation to the manufacture of liquor or the fermentation of mash for distillation or production of alcohol in a dwelling house", quoting United States v. Seiler, D.C.Md., 40 F. Supp. 895, 896. As shown by the Seiler case, the rule in the latter situation is that "the odor of the whiskey mash emanating from a dwelling house, detected by experienced revenue officers, was in itself probable cause for a reasonable belief that the statutes were being violated." While the Seiler case was concerned with the sufficiency of such evidence to constitute probable cause for the issuance of a search warrant, we think it also justifies a reasonable belief that the statute is being violated somewhere on the premises  although this fact alone might not justify the arrest of any person found on the premises. Cf. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. But where the occupant of the premises freely admits that he is the possessor of the still from which such odors are emanating, we think the officer would be derelict in his duty if he did not arrest the offender, then and there, even though he has no warrant of arrest; and that, as an incident to such arrest, he may lawfully search the premises, without a warrant, for the contraband whiskey.
For the reasons stated, the judgment appealed from should be and it is hereby
Affirmed.
DREW, C.J., and TERRELL, SEBRING, HOBSON and THORNAL, JJ., concur.
THOMAS, J., dissents.
THOMAS, Justice (dissenting).
An information was filed in the Criminal Court of Record of Hillsborough County in which the appellant was charged in five counts with as many violations of the laws relating to intoxicating liquors. The case was tried before the judge who found the defendant guilty as charged, imposed a sentence of three years in the state penitentiary *603 on the first count and deferred sentence on the others.
All the questions posed by the appellant arise from rulings on the admissibility of testimony based on a search of the appellant's premises by the arresting officer.
About four months before the trial, the appellant filed a motion to quash the warrant purporting to authorize a search of his property, and to suppress the evidence obtained in the search the officer conducted. The judge heard testimony relevant to the origin and execution of the warrant and from the record of this hearing a picture of the incidents may be drawn. It was stipulated by counsel representing the state and the defendant that no search warrant affecting this appellant had been issued by the Circuit Court or the Criminal Court of Record and none had been returned or filed in either of these courts. The appellant was then shown a copy of a search warrant and asked whether or not on a certain date he was in possession of the property described in it. He said he was and that a "raid" had been made on the property at that time by a deputy of the sheriff and an agent of the State Beverage Department.
The appellant related that he heard a car approach and went to his door where he was confronted by an agent of the department holding a gun who said "`I have got a warrant here for you.'" The agent read the warrant, gave appellant a copy and searched the premises which the appellant occupied as his home.
At the conclusion of the hearing, the judge granted the motion to quash and to suppress the evidence.
Since the original affidavit and warrant were never introduced, it is impossible to determine the validity of the warrant at the time it was served, so in the state of the record I assume that the validity of the search itself and the admissibility of the evidence it produced must depend on the power the officer had, without any warrant, at the time of the searching. It is necessary to continue the exploration because the judge despite the order quashing the warrant and suppressing the evidence, allowed testimony about the seized contraband to be introduced when the appellant was tried upon the information.
The appellant contends that the order made before trial rendered the evidence thereafter inadmissible and he cites a decision of the Kansas City Court of Appeals, State v. Windsor, Mo. App., 289 S.W. 663, based on a decision of the Supreme Court of Kansas, State v. Zugras, 306 Mo. 492, 267 S.W. 804, in which it was held that once the evidence in such cases is suppressed on motion made in advance of trial the matter becomes res judicata and may not be reopened.
We cannot adopt an absolute rule that when a search warrant has been stricken and the evidence produced under it has been suppressed, the prosecution ends then because we have ruled to the contrary. In Brown v. State, Fla., 46 So.2d 479, this court dealt with a similar situation. Before the trial of a defendant on the charge of violation of the laws against lottery operations the search warrant was quashed because the affidavit on which it was based was fatally defective. At the trial, the sheriff testified that he had trustworthy information that the defendant was then committing a felony, namely, possessing and transporting lottery tickets. Notwithstanding his prior order, the judge admitted in evidence the property seized on the invalid warrant. In other words, the officer was shown to have the power to seize as an incident to lawful arrest even though at the time he had had no search warrant at all. About a year ago the principle expressed in the cited case was followed in Turner v. State, Fla., 74 So.2d 891.
I cannot, therefore, accept the appellant's view that the first ruling became res judicata, but I have examined the record to see if the facts developed show that the officer had the power to seize without a search warrant the contraband about which testimony was eventually used against the appellant, that is to gauge, by the criterion fixed in Brown v. State and Turner v. State, *604 supra, the right of the officer to act as he did.
The agent, or supervisor, of the Beverage Department and the man who accompanied him, whether he was a representative of the Federal Alcoholic Tax Unit or a deputy sheriff I cannot tell, drove toward appellant's place and about 50 or 75 yards from the house found their way obstructed by a wire gate. Although the agent said that when he got out of the car to open the gate, he smelled mash, which from the experience he had gained by arresting defendants in the moonshine business, he recognized as emanating from fermentation in the manufacture of illicit liquor, the facts as I construe them did not warrant his making an arrest on that information alone. True, he said the odor was distinct; that "[T]here is nothing else in the world I have ever encountered that smells like it," and said that an agent of the Federal Alcoholic Tax Unit told him about the operation, but the witness admitted that at the time he detected the odor, he could see nothing being done illegally, and also admitted that everything taken was seized by virtue of the search warrant.
Obviously, the officer was entering upon his mission solely because he had with him a search warrant. It was the excursion under this warrant that took him to appellant's gate. All his actions thereafter were plainly motivated by the authority he was sure he had by reason of the writ, and just as plainly the odor he smelled was an afterthought. The agent was the sole witness and his story confirms the view that he was operating only by virtue of the warrant for he said "Well, I had the search warrant. I went on in there, whether I smelled it or not, but I did smell it."
Of course, the state could not rely at the trial on the search warrant which had then been stricken. The bare facts irrespective of the warrant would have to establish the justification for the arrest and attendant search. The trustworthiness of the officer's information would have to depend on the simple statement that the agent was told that morning, or possibly the day before, that moonshine was being made at the place, which might be substantiated by the odor he noted, but I think this amounts to little because of the absence of convincing evidence that he was sufficiently familiar with the subject to spot an illegal still by the smell. In reply to a question how he knew of the operation, he said: "Mr. Sills [his companion] told me of it," and "I got it from agent, from the Federal Alcoholic Tax Unit." From such a meager showing the conclusion that he had trustworthy information that a crime was being committed was too strained for me to accept.
Though odors may not alone justify a search without a warrant, Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951, evidence of them may, when they are identified by one qualified unerringly to recognize them, as emanating from a "forbidden substance" become a sufficient basis for a search warrant. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.
In the majority opinion the author quotes from the opinion in United States v. Seiler, D.C.Md., 40 F. Supp. 895, as follows, "`the odor of the whiskey mash emanating from a dwelling house, detected by experienced revenue officers, was in itself probable cause for a reasonable belief that the statutes were being violated.'" The author observes that the court dealing with the cited case was concerned with probable cause as a basis for a search warrant but that he thinks it would also justify "a reasonable belief that the statute is being violated somewhere on the premises * * *." He then suggests a comparison with Johnson v. United States, supra [333 U.S. 10, 68 S.Ct. 369]. But in that case the very opposite opinion is expressed: "Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the [Fourth] Amendment to a nullity and leave the people's homes secure only in the discretion of police officers." So an officer cannot rely on his sense of smell, decide that it is unerring, determine the existence of probable *605 cause from the odor, functioning as a neutral magistrate, and then as an arresting officer, proceed to arrest and justify the search as incident to the arrest. The majority opinion invites the evil that the Supreme Court of the United States condemns.
To bolster the position of a majority of the court, two circumstances are stressed, first the so-called invitation to search, and second the statement made to the beverage agent by the agent of the Alcoholic Tax Unit. I can attach no real importance to either. When a man is confronted at the door of his home by an officer, who waves a warrant and expresses a purpose to search, does the homeowner waive the protection of the Constitution by saying "Help yourself, Go right ahead"? If that is the law then the homeowner must stand mute or resist. As for the statement of the agent, it was nothing but hearsay. There may have been a combination of circumstances, especially if the agent had given the basis for his statement, that would have convinced an impartial magistrate to issue a search warrant, Perez v. State, Fla., 81 So.2d 201, but I cannot agree that they could be used as a foundation for an arrest without warrant.
An impartial magistrate would have decided whether or not the witness who claimed he recognized the smell as coming from mash being used in the illegal manufacture of liquor was so qualified by experience that his statement was reliable.
If the search warrant is disregarded, then there was no authority to cause appellant's door to be opened and until it was opened, the officer did not know who was within. The knowledge that appellant was in the house was gained only after the appellant answered the officer's call or heard the officers approach. It was only then that the arrest was made. So, as was said by the author of the opinion in Johnson v. United States, supra, where the facts resembled very closely the ones in this case, the state "is obliged to justify the arrest by the search and at the same time to justify the search by the arrest."
I am unable to agree with the majority opinion so I dissent.