114 So.2d 487 (1959)
Ted J. RINEHART, Appellant,
v.
STATE of Florida, Appellee.
No. 1096.
District Court of Appeal of Florida. Second District.
September 2, 1959.
Rehearing Denied September 23, 1959.
Hal S. Ives (of Ives, McIntosh & Davis), West Palm Beach, for appellant.
Richard W. Ervin, Atty. Gen., and Irving B. Levenson, Asst. Atty. Gen., for appellee.
SHANNON, Judge.
Appellant appeals from a conviction in the lower court under a two-count information; first, attempting to break and enter with intent to commit a misdemeanor, petit larceny, and second, possession of burglary tools. On his appeal defendant urges five points; namely, (1) is an arrest, where no felony or misdemeanor was committed in *488 the officer's presence, a lawful arrest, (2) is a search of a person and his car, without a search warrant, as a result of an unlawful arrest, legal, (3) does a search of a person's automobile without a valid search warrant by virtue of a "purported consent", procured by duress and coercion, constitute a waiver, (4) does a mere act of knocking on a door of an apartment in a hotel building and then walking away constitute an attempt to break and enter the apartment for the purpose of taking and carrying away property of another of the value of less than one hundred dollars, and (5) does the mere possession of keys, together with other paraphernalia, constitute possession of burglarious tools within the meaning of the statute?
The state, being dissatisfied with the questions in the defendant's brief, has substituted its own and lessened the number to three. However, for the purpose of this appeal it is not necessary to answer the five questions posed by the defendant.
The facts of this case are relatively simple. A resident of the fashionable Palm Beach Towers Apartment Hotel in Palm Beach, Florida, during the daytime heard some one ring the doorbell to her apartment and immediately thereafter when she went to the door she saw the defendant walking down the hall, and her dog was barking furiously at him. She asked the man what he wanted and the defendant's answer was "I have the wrong apartment", and he proceeded on. The tenant recognized the voice she had heard in December when the same circumstances had transpired and on which date another apartment in the hotel had been burglarized. The tenant immediately placed a call to the front desk of the hotel and reported this incident. Whereupon, the superintendent dispatched a bellhop to the floor of the tenant to investigate. The bellhop testified that he had observed the defendant leaving the building through a back door and coming around the side of the building near the front entrance. Both the building superintendent and the bellhop approached the defendant and engaged him in conversation, awaiting the arrival of the police whom the superintendent had summoned. When the police arrived, defendant initially denied having been in the hotel, but after being informed that he had been seen in the building, he admitted that he had been in the hotel visiting a married woman whose name he would not reveal. He was thereupon arrested by the police on a vagrancy charge. While he was under arrest he was asked by the police if he would give them permission to search his station-wagon, and his remark was, "I might as well give you permission to search it because you will search it anyway." Defendant then wrote out in his own handwriting his permission for the police to search his car. The car was searched and in it were found a pair of white gloves, a flash light, miscellaneous keys, small papers or cardboard with keys inserted containing addresses of various residences in Palm Beach County, several metal files, small screw drivers, a small vise, locks and lock equipment, key making equipment, and tools used for the manipulation of locks which are commonly know as lock picks.
In his first point the defendant argues that his arrest was illegal in that there was no offense committed in the presence of the police officers and cites § 901.15, Florida Statutes, F.S.A., which sets out when a peace officer without a warrant may arrest. However, he apparently overlooks § 856.03, Florida Statutes, F.S.A., which provides in part:
"Any sheriff, constable, policeman or other lawful officer may arrest any vagrant described in § 856.02 without a warrant in case delay in procuring one would probably enable such alleged vagrant to escape arrest. * * *."
Section 856.02, Florida Statutes, F.S.A., lists a number of persons who shall be deemed vagrants, one classification being "persons wandering or strolling around from place to place without any lawful purpose or object." The fact that subsequently the defendant was acquitted on the *489 charge of vagrancy does not militate against or even decide the question of his arrest being lawful or unlawful. In Brown v. State, Fla. 1956, 91 So.2d 175, 177, our Supreme Court stated:
"* * * The fact that appellant was subsequently acquitted of this charge in the traffic court is of no consequence insofar as the validity of the arrest itself is concerned. * * *."
Under the authority of the Brown case, supra, together with the facts appertaining in the instant case, this court holds that the arrest was lawful.
In view of the fact that the defendant's arrest was lawful, we next come to the question as to whether or not the search of his automobile was a lawful one. That it was is sustained by a long list of cases decided by the courts of this state. Blake v. State, Fla.App. 1959, 112 So.2d 391; Pegueno v. State, Fla. 1956, 85 So.2d 600; Rodriguez v. State, Fla. 1952, 58 So.2d 164; Zygula v. State, Fla. 1951, 51 So.2d 287; and Brown v. State, Fla. 1950, 46 So.2d 479. In addition to the search without a search warrant upon the defendant's arrest, the same can be fortified by defendant's consent. Blake v. State, Fla.App. 1959, 112 So.2d 391; Slater v. State, Fla. 1956, 90 So.2d 453, and cases cited therein. True, he was under arrest at the time he gave his consent, but being under arrest does not in and of itself deprive his consent of the free and voluntary quality which is essential. In the case of Shay v. State, Fla. 1954, 70 So.2d 363, our Supreme Court approved as voluntary the consent to search an automobile while accused was under arrest.
The fifth question has to do with possession of burglarious tools, and defendant urges that no burglary having been committed and the defendant not having been arrested for any lawful purpose, possession is not a crime within the meaning of the Florida statute. Without setting forth all of the testimony in regard to the keys, tools, etc., suffice to say that a great number of keys were found in defendant's possession attached to small slips of paper containing addresses of various residences in Palm Beach County, and these keys fitted locks at the addresses. In addition to this, the defendant was in possession of a set of keys which opened over 150 apartments in Palm Beach Towers Hotel. The jury was justified in reaching its decision that the defendant was in possession of burglarious tools and equipment denounced by the statute.
We have read the record and studied the briefs and fail to find reversible error in any of the points the defendant has raised.
Affirmed.
ALLEN, C.J., and KANNER, J., concur.