Fuqua *v.* State

No. 42145          October 8, 1962          145 So. 2d 152

*Barnett, Montgomery, McClintock & Cunningham,* Jackson; *Bidwell Adam,* Gulfport, for appellant.

*G. Garland Lyell, Jr.*, Asst. Atty. Gen., Jackson, for appellee.

196

GILLESPIE, J.

Appellant was jointly indicted with James Dolan and Betty Johnson for possession of burglar's tools. Separately tried, appellant was convicted and sentenced to the penitentiary.

The facts are not in dispute. Highway Patrolman Anderson was in a patrol car traveling west on U. S. Highway 90 between Biloxi and Gulfport. Highway Patrolman Button was in another patrol car behind Anderson. Anderson was looking for appellant. Sometime before, Anderson had heard an official bulletin on the Highway Patrol radio at Gulfport that the Sheriff of Hinds County had a warrant for appellant's arrest on a perjury charge. Anderson had a photograph of appellant in his patrol car and had information that appellant was driving an automobile with a Georgia license tag. At the aforementioned time and place, Anderson saw appellant driving an automobile and radioed Patrolman Button to check the license tag. Button re-

ported that it was a Georgia tag. About this time, appellant turned off. the highway at the Friendship House Restaurant. Anderson turned onto a service road and immediately returned to the place where appellant parked at the Friendship House, arriving just as appellant and his two companions alighted from the car. Button also arrived about this time. Anderson immediately arrested appellant. He did not then search appellant's car, but looked into the rear and saw some lights, a small bag, and some clothing.

After Anderson was satisfied that appellant was unarmed, they all drove to Highway Patrol headquarters, a distance of about five miles west of the Friendship House. Appellant rode with Anderson, Dolan with Button, and between them was appellant's car driven by Betty Johnson. A short time after they reached Patrol Headquarters, appellant's automobile was searched. To a leading question propounded by defense counsel, Anderson said it was "roughly" thirty minutes after arrival at Patrol Headquarters. The testimony would justify a finding that the car was searched less than thirty minutes after arrival at Patrol Headquarters. There is no proof whatever that the officers abandoned or interrupted their duties in connection with the arrest of appellant before searching the car. Appellant and the car were at Patrol Headquarters when the search of the car was made.

The automobile was claimed by Fuqua but was licensed to R. K. Head, with a Georgia address. In the car was a Louisiana certificate of title. When the automobile was searched, the various articles found were listed by Anderson and two others who assisted in making the inventory. The following articles were found in the car: 3 boxes of red tissue, 2 big spot lights, 1 tire tube, 1 box socket wrenches, 1 pair of black kid gloves, 1 large flash light, 1 box of assorted keys (skeleton), 1 small pocket or keyhole flash light, 2 large magnets.

Also, between the front and back seats of the car, there was a large amount of clothing for men and women, a bag containing two loaded pistols, about 25 rounds of extra ammunition, a police sergeant's badge, and some of the lights already mentioned. The skeleton keys were for various kinds of automobiles, juke boxes, pay telephones, and other kinds of locks. One key would unlock the door to the Highway Patrol Headquarters, and another unlocked one of the patrol cars.

Joe Simon, resident of Biloxi, testified that one of the pistols found in appellant's car was purchased by Simon about a year before and loaned to one Bennett. He identified the pistol by serial number. Bennett testified that he borrowed this particular pistol from Simon and had it in an apartment in Jefferson Parish, Louisiana, a few weeks prior to the time appellant was arrested by Patrolman Anderson; and that two men, unknown to Bennett, impersonated officers by using a badge like the one found in appellant's car, and entered Bennett's apartment. He further testified that when the men got into his apartment they drew a gun on him, and this gun was identical in appearance to one of the guns found in appellant's car. Bennett said he and a companion were robbed of money and the identical pistol found in appellant's car by Patrolman Anderson. The two pistols and police badge were not described in the indictment. The proof showed that most of the articles found in the automobile were either designed to aid in the commission of burglary or larceny, or were articles commonly used by burglars.

Appellant offered no proof whatever.

Appellant assigns as error the action of the trial court in overruling the motion for a directed verdict. The argument under this assignment is directed to the sufficiency of the evidence. Appellant was indicted under Section 2044, Mississippi Code of 1942, which follows:

"It is unlawful for any person to have in his possession implements, tools, or instruments designed to aid in the commission of burglary, larceny or robbery; and on the conviction of any person thereof, he shall be punished by imprisonment in the penitentiary not exceeding five (5) years, or in the county jail not exceeding one year. The carrying concealed about one's person, or in one's baggage, implements, tools, or instruments peculiarly adapted to aid in the commission of burglary, larceny or robbery, shall be prima facie evidence of intention to use them for such purpose."

(Hn 1) Appellant contends that the articles found in the car were neither designed for nor peculiarly adapted to aid in the commission of a burglary. We hold the evidence sufficient to justify the jury in finding that appellant violated the statute. The 150 skeleton keys were peculiarly adapted to aid in the commission of burglary. (Hn 2) This was established by the proof, and is a matter of common knowledge. (Hn 3) It is not necessary that the tool or article be designed and made solely for use as a burglar's tool. It may be designed for a lawful use and still be a burglar's tool. The other items, such as lights, kid gloves and wrenches, were shown by the proof to be useful adjuncts to burglar's tools, and as such became burglar's tools since all of the circumstances shown by the evidence justified a finding that they were possessed for the unlawful purpose of committing the crimes named in the statute. The statute does not denounce as unlawful the possession of any particular implements, tools, or instruments. The possession of a particular article, or combination of articles, may or may not be unlawful under the statute, depending on whether the evidence reveals circumstances from which it may be inferred beyond a reasonable doubt that the possessor intended that he or some other person use the article or articles in aid of burglary or other similar crime. The Mississippi statute does not refer

to a specific felonious intent, but a felonious intent must be proven. **(Hn 4)** The State is not required to prove a specific intent to commit a particular crime; but it is sufficient if the circumstances justify the·inference that the article or articles were possessed for such criminal purpose. Thus, a general intent is sufficient.

The cases from other jurisdictions reveal that the possession of skeleton keys has probably resulted in more convictions than any other article. Indeed, the unexplained possession of a large number of various types of skeleton keys is strong evidence that they were possessed for a felonious purpose. The presence in the automobile of the other items, especially the loaded pistols, extra ammunition, policeman's badge, keyhole flashlight, kid gloves, and spot lights, and the fact that there was a stolen pistol in the car, indicates that the combination of articles described in the indictment were possessed for unlawful purposes. The jury was fully justified in finding the evidence established appellant's guilt beyond a reasonable doubt. Anno., 103 A.L.R. 1313; 9 Am. Jur., Burglary, par. 89, page 283; Illinois v. Eposito, 163 N.E. 2d 487; Rinehart v. State (Fla.), 114 So. 2d 487; Cf. Head and Cummings v. State (Miss.), 136 So. 2d 619.

**(Hn 5)** Appellant next assigns as error the action of the lower court in admitting in evidence the testimony of Bennett that he was robbed in Louisiana a few weeks before appellant was arrested in Mississippi in possession of a gun stolen from Bennett in said robbery.

It is a general rule that evidence that an accused committed another crime independent of, and unconnected with, the one for which he is being tried, is inadmissible. However, the court did not err in admitting the testimony of Bennett. One of the pistols found in appellant's car had been recently stolen. The other pistol found in appellant's car and the police badge were identical to the pistol and badge used in the Louisiana robbery.

These facts tended to establish that the articles described in the indictment were possessed for felonious purposes. Proof of the Louisiana robbery was therefore a link in the chain of circumstances which justified the jury in characterizing the articles found in appellant's car as burglar's tools. Therefore, the evidence of the Louisiana robbery was relevant as tending to establish his guilt of the crime of possession of burglar's tools. State v. Hefflin, 89 S.W. 2d 938 (Mo.), 103 A.L.R. 1301; 22 C.J.S., Criminal Law, Sec. 691(7); Wharton's Criminal Evidence, Vol. 1, page 498, et seq.; Cf. Mattox v. State (Miss.), 137 So. 2d 920.

(Hn 6) Appellant assigns as error the action of the lower court in admitting the two pistols in evidence. These pistols were not described in the indictment. The pistols were admissible for the reason already stated, and it was not necessary that they be described in the indictment.

The other two propositions raised by appellant are based on the contention that the search of appellant's car was unreasonable and illegal. This contention has two main points of inquiry: (1) Was the arrest legal? and (2) Was the search of the car incident to the arrest?

(Hn 7) We hold that Patrolman Anderson had lawful authority to arrest appellant. The arresting officer had official information that appellant was wanted on a perjury charge and that the Sheriff of Hinds County had a warrant for his arrest of that charge. He also had in his patrol car a photograph of appellant and had made a study of it in order to be able to recognize appellant. Official information is presumed to be authentic. It was sufficient to constitute probable cause for the arrest of appellant. Sec. 2470, Miss. Code of 1942. Law of Arrest, Alexander, Sec. 77; Silver v. State (Tex.), 8 S.W. 2d 144, 60 A.L.R. 290; Shay v. State, 229 Miss. 186, 90 So. 2d 209.

**(Hn 8)** There is no merit to the contention that the arrest was illegal because the officer did not comply with the requirement of Code Section 2470 to the effect that the accused must be informed of the object and cause of his arrest.

**(Hn 9)** We also hold that the search of appellant's car was incident to the arrest, and that the evidence found by the search was admissible. Appellant's argument is based on the officer's failure to make the search at the Friendship House immediately after the arrest. The Constitution only requires an officer to be reasonable. The record indicates that Patrolman Anderson had reasonable ground to believe that appellant was potentially dangerous and might make violent effort to escape. An officer should take reasonable precautions in such matters both for his own safety and to insure against the escape of the person arrested. There were two other people in appellant's car. Even with the help of Officer Button it would not have been feasible or safe to search the car on private property at the Friendship House. The items found had to be inventoried and tagged. It was proper, reasonable and sensible to do what the officers did in this instance—drive to Patrol Headquarters, turn the prisoners over to the proper person, and then search the car. There is nothing in the record to show that Officer Anderson lost any unnecessary time before making the search. No other duty or activity intervened between the arrest and the search. It is reasonable to infer that a few minutes time would necessarily elapse after the three automobiles reached patrol headquarters before the officers could make the search.

All of the circumstances must be taken into consideration, and it seems clear to us that there was no undue delay in making the search in this case. Our attention has been directed to the cases of Millette v. State, 167 Miss. 172, 148 So. 788; Lancaster v. State, 188 Miss.

374, 195 So. 320; Page v. State, 208 Miss. 347, 44 So. 2d 459, and Martin v. State, 217 Miss. 506, 64 So. 2d 629. These cases are not in point on the facts. In all four of the cited cases, the search was remote and not reasonably connected in point of time with the arrest.

In the case of Shay v. State, 229 Miss. 186, 90 So. 2d 209, the patrolman delivered Shay and his bag to the Sheriff of Warren County after having traveled from some point on Highway 61 north of Rolling Fork in Issaquena County. The search of the bag was not made until sometime after he had been brought to Warren County. See also Bartlett v. U. S., 232 F. 2d 135; State v. Green (Mo.), 292 S.W. 2d 283; White v. State (Ind.), 152 N.E. 2d 894; Richardson v. State (Okla.), 264 P. 2d 371.

After carefully considering the various assignments, we are of the opinion that there is no reversible error.

Affirmed.

*McGehee, C. J., and Kyle, Ethridge and Jones, JJ.,* concur.