293 So.2d 434 (1974)
Henry SALISBURY
v.
STATE of Mississippi.
No. 47802.
Supreme Court of Mississippi.
March 25, 1974.
Rehearing Denied May 13, 1974.
*435 Sekul, Hornsby, Wallace & Blessey, Biloxi, for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Presiding Justice.
The appellant, Henry Salisbury, was convicted in the Circuit Court of Harrison County, Mississippi, of the possession of burglary tools and was sentenced to serve a term of two (2) years in the Mississippi State Penitentiary.
The appellant contends on appeal that he is entitled to a new trial and has assigned several grounds in support of his contention. We notice only those necessary in view of our holding in this case.
Officers of the sheriff's department of Harrison County, Mississippi, and certain members of the Federal Bureau of Investigation made an arrest of one James Tunnard D'Artois, who was wanted in Louisiana under a charge of murder. The Louisiana authorities were informed of the arrest, and one of them came to Harrison County. The Mississippi officers were told that the alleged murder was committed by D'Artois with a .22 caliber pistol. The Mississippi officers obtained a search warrant to search the apartment of appellant, where D'Artois had been staying before his arrest, in an effort to find the .22 caliber pistol, said to have been used in the Louisiana murder. The appellant was not at home. A copy of the search warrant was left on a television in a conspicuous place, and a careful search was made. The pistol was not found, but certain tools *436 and equipment alleged to be used and useful in breaking and entering as burglary tools were discovered. The officers confiscated a heavy drill, a Transceiver [a walkie-talkie], a burning torch, gloves, an Ace Lock-Pick Kit in a black case, six ropes covered with plastic insulation, ski caps, a siren cable, and radio monitor crystals.
The appellant contends on appeal that the trial court erred in not sustaining the demurrer to the indictment because it is said the indictment does not charge "intent to use the tools described for the purpose of breaking and entering." The demurrer did not raise the point; it simply stated that the tools described were not burglary tools. The demurrer was properly overruled for two reasons: (1) One of the tools named in the indictment [the lock-pick kit] was designed to be used for the purpose of breaking and entering and was, therefore, a burglary tool per se, and (2) The indictment charged that the defendant "did unlawfully, wilfully and feloniously have in his possession ... certain tools, ... etc." The indictment, using the word "felonious" means that the possession of the tools was a felony, and in order for the possession of ordinary tools to be burglary tools, the proof must show from the circumstances surrounding the possession that the tools had been used, or were to be used, to unlawfully break and enter. Sullivan v. State, 254 So.2d 762 (Miss. 1971); Johnson v. State, 246 Miss. 182, 145 So.2d 156 (1962); and Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962).
The possession of tools designed as or peculiarly adaptable for unlawful use of breaking and entering is made a crime in this state by Mississippi Code Annotated Section 97-17-35 (1972), which is in the following language:
"It is unlawful for any person to have in his possession implements, tools, or instruments designed to aid in the commission of burglary, larceny or robbery; and on the conviction of any person thereof, he shall be punished by imprisonment in the penitentiary not exceeding five (5) years, or in the county jail not exceeding one year. The carrying concealed about one's person, or in one's baggage, implements, tools, or instruments peculiarly adapted to aid in the commission of burglary, larceny or robbery, shall be prima facie evidence of intention to use them for such purpose." Miss. Code Ann. § 97-17-35 (1972).
In Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962), we said: "It is not necessary that the tool or article be designed and made solely for use as a burglary's tool. It may be designed for a lawful use and still be a burglary's tool." [246 Miss. at 199, 145 So.2d at 154]. However, the testimony in Fuqua showed that among the tools were found one-hundred and fifty (150) skeleton keys peculiarly adaptable to the commission of burglary.
There seems to be an underlying harmony in our opinions as to adaptation of ordinary articles and tools used to burglarize. The outstanding evidence in each case points to at least one of the tools readily recognized as a burglary tool. In Fuqua, supra, as above shown, many skeleton keys were obviously used to fit many locks. In McCollum v. State, 197 So.2d 252 (Miss. 1967), the burglary alarm jumper found in the search of appellant's apartment was obviously a burglary tool.
Moreover, appellant did not raise an objection in the trial court that the indictment did not specifically charge intent to use the tools to break and enter, and it cannot now be raised on appeal. Mississippi Code Annotated Section 99-7-21, Note 2 (1972).
It is only in cases where the indictment does not charge an offense that defects in an indictment may be challenged on appeal for the first time. Cohran v. State, 219 Miss. 767, 70 So.2d 46 (1954).
*437 We are of the opinion that it is a jury question as to whether or not the tools described in the indictment were intended to be used as burglary tools.
After the indictment was returned and before the trial, the defendant made a motion to suppress the evidence upon the ground that the articles seized by the officers were not described in the search warrant as being the thing searched for, as required by the State and Federal Constitutions.
The court, after hearing the testimony and argument, overruled the motion and permitted the search warrant and evidence obtained thereby to go to the jury.
On appeal, the appellant argues that the law requires the thing to be seized to be described in the search warrant and in the affidavit, citing the State and Federal Constitutions as authority. This is of course true where the thing to be seized is the thing for which the search is made. This rule does not apply, however, to things of contraband discovered while the officers are legally on the premises in obeyance to a lawful writ requiring them to perform a legal duty.
When an officer is given a search warrant he is duty bound to perform the order requiring a search of the place designated in the warrant for the thing therein described. Mississippi Code Annotated Section 97-11-37 (1972).
An officer at all times is required to seize contraband of whatever nature and wherever it may be discovered so long as the officer is not trespassing or violating the constitutional rights of the possessor at the time the discovery is made. 79 C.J.S. Searches and Seizures § 17, at 792-793 (1952).
In Reynolds v. State, 136 Miss. 329, 101 So. 485 (1924), where officers had procured a search warrant to search the premises of a named person, and during the search the officers discovered a still, it was the duty of the officers to seize the still since it was contraband. In that case, the defendant contended as here that the still was not described in the search warrant and its seizure was illegal. The Court replied, however, by saying:
"It seems to us that the reply to this contention is that the officers were legally in the residence and saw the still there, which by law was made a crime; that is to say, it is made a crime by law to have a still, or any integral part thereof, except for the purposes named in the exceptions in the statute. * * * Being lawfully in the residence of appellant, and finding these contraband articles therein, it became and was the duty of the sheriff to seize them and to deal with them as provided by law." 136 Miss. at 345, 101 So. at 487.
This Court has often pointed out that where officers are lawfully on the premises of another by virtue of a valid search warrant, articles of contraband or articles of evidence connected with another offense are subject to seizure although not described in the search warrant. Prueitt v. State, 261 So.2d 119 (Miss. 1972); Gann v. State, 234 So.2d 627 (Miss. 1970); Williams v. State, 216 Miss. 158, 61 So.2d 793 (1953); see also Caldwell v. State, 194 So.2d 878 (Miss. 1967); and 79 C.J.S. Searches and Seizures § 17, at 792-793 (1952).
Appellant has cited Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) and Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); but we are of the opinion that these cases are not applicable here because the facts in those cases are different from the facts in this case. Moreover, the case of Marron has apparently been diluted by the many cases since that time interpreting similar facts in a more practical way. Johnson v. United States, 110 U.S.App.D.C. 351, 293 F.2d 539 (1961); United States v. Coots, 196 F. Supp. 775 (D.C.Tenn. 1961).
However, there are two assignments of error which are interrelated, erroneous, *438 and prejudicial so as to require a new trial in this case. The first is based on the contention of the appellant that the court erroneously permitted the prosecution to again introduce before the jury the evidence offered by the state on the motion to suppress the search warrant and the property seized thereunder. The second assignment is based upon the argument of the district attorney with reference to the testimony. These objections arose in the following manner.
It became necessary for the state to show probable cause for the issuance of the search warrant on the motion to quash hearing. In doing so the state offered testimony of a federal subpoena to the defendant involving a wire tap case in Georgia. They also offered evidence to show that a certain James Tunnard D'Artois had committed murder in Plaquemine Parish, Louisiana, with a .22 caliber pistol, and that this pistol was thought to be in defendant's apartment, since D'Artois was staying with the defendant. The trial court held that this testimony was sufficient to establish probable cause for issuing the search warrant. This evidence was, of course, not relevant to the issue as to the possession of burglary tools. Nevertheless, the state persisted over the trial court's effort to keep this evidence out of the trial, so that finally the jury got all the information about the testimony offered to show cause for the issuance of the search warrant.
Whether or not a search warrant was properly issued is a question of law for the trial judge and not the jury. It is admissible in the record only to show that there was probable cause for the issuance of the writ. The evidence before the trial judge is not to be again offered before the jury. See Sisk v. State, Miss., 290 So.2d 608, 1974. The rule here is different from the rule in confessions, where the state is required to offer the evidence before the jury. In the instant case this testimony tended to show that the defendant was a bad character and to show that he was guilty of other crimes.
This error was compounded by the argument of the district attorney when he told the jury that they had to take into consideration the type of man the defendant was keeping company with, and that this ought to tell the jury something.
This case must be reversed so that the appellant may be tried without this prejudicial evidence.
Reversed and remanded.
PATTERSON, INZER, ROBERTSON and BROOM, JJ., concur.