# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-00164-SCT

*DERRICK MONTRELL HENLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/09/2012 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| TRIAL COURT ATTORNEYS: | JAMES E. SMITH, III |
| | STEVEN KILGORE |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ELLIOTT GEORGE FLAGGS |
| | JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 04/17/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KITCHENS AND COLEMAN, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. Derrick Montrell Henley appeals the verdict of a Neshoba County Circuit Court jury finding him guilty of possession of burglary tools. We find that the State failed to present sufficient evidence that Rice intended to use the tools in question to aid in the commission of a burglary. Accordingly, we reverse and render Henley's conviction and sentence.

**FACTS**

¶2.     The events of this case occurred at Central Mississippi Recycling in Philadelphia, Mississippi, just after midnight on June 20, 2011. Central Mississippi Recycling consists of a main office building and four other buildings. The property has one main entrance and four secondary entrances. When the business is closed, the main entrance is secured by a "gate" consisting of a metal cable hanging across the driveway. When property manager Gene Luke left the property on June 19, 2011, he made sure that the gate to the main entrance was locked.

¶3.     Due to several previous burglaries at Central Mississippi Recycling, the Philadelphia Police Department had increased its patrol of the area. Sometime after midnight on June 20, 2011, Officer Jonathan Dearing was patrolling near Central Mississippi Recycling when he noticed that the gate to the main entrance of the property had been laid on the ground. He pulled onto the property, exited his vehicle, and checked the gate. The cable appeared to have cut marks on it, and the cable clamps for the gate had been loosened, which had caused the cable to fall to the ground. Dearing returned to his vehicle, drove over the cable, and began to investigate the rest of the property. After driving around the property for some time, Dearing observed a vehicle driving with its headlights off around the side of one of the buildings. Upon noticing Dearing, the vehicle turned around, turned its lights on, and started to leave the property. Dearing then initiated his blue lights and stopped the vehicle approximately three hundred yards from the main entrance of the property.

¶4.     Dearing approached the vehicle and asked the driver what he was doing on the property. The driver responded that he was looking for a place to turn around. Dearing asked the driver for identification, but the driver had none, explaining that his license had

2

been suspended. The driver then told Dearing that his name was Derrick Henley and gave Dearing his social security number. At that point, Dearing noticed pliers and bolt cutters on the floor of Henley's vehicle. Screwdrivers, wrenches, and a socket set also were found in Henley's car. Dearing asked Henley to exit the vehicle and searched him, finding a flashlight in Henley's pocket.

¶5. Henley was taken into custody and questioned by Lieutenant Dan Refre of the Philadelphia Police Department. Henley denied any involvement in any criminal activity and explained that he was merely turning around in the Central Mississippi Recycling parking lot when he was pulled over.

## PROCEDURAL HISTORY

¶6. Henley was indicted for possession of burglary tools in violation of Section 97-17-35 of the Mississippi Code. *See* Miss. Code Ann. § 97-17-35 (Rev. 2006). His indictment alleged that he "did willfully, unlawfully and feloniously possess tools designed to aid in the commission of a burglary, to-wit: bolt cutters, pliers and a flashlight[.]" A jury trial was held on November 7, 2012, in the Neshoba County Circuit Court. Luke, Dearing, and Refre testified for the State. The bolt cutters and pliers found in Henley's vehicle and the flashlight found on his person were admitted into evidence during the State's case-in-chief. At the conclusion of the State's case-in-chief, Henley moved for a directed verdict, arguing that the State had failed to prove that he had possessed the tools with the intent to commit a burglary. The trial court overruled Henley's motion, and Henley declined to offer any evidence in defense. During closing arguments, Henley's attorney argued that Henley had the tools in his vehicle because he worked as a mechanic and asserted that the bolt cutters showed no signs

3

of use. Henley also requested that the Court give a peremptory instruction, which instructed the jury to find Henley not guilty, but this request was denied.

¶7. The jury returned a unanimous verdict finding Henley guilty of possession of burglary tools, and the court sentenced him to five years' imprisonment. Henley moved for a new trial, but the trial court denied his motion. Henley now appeals to this Court, arguing that the trial court erred in denying Henley's motion for a directed verdict, his request for a peremptory instruction, and his request for a new trial. Because we find that the State's evidence in this case was legally insufficient to secure a guilty verdict, we will discuss only Henley's argument regarding the trial court's denial of his motion for directed verdict and request for peremptory instruction.

## STANDARD OF REVIEW

¶8. Both a motion for a directed verdict and a request for a peremptory instruction challenge the legal sufficiency of the evidence; thus, the standard of review for peremptory instructions and directed verdicts is the same. *Wall v. State*, 718 So. 2d 1107, 1111 (Miss. 1998). This Court reviews a challenge to the sufficiency of the evidence in the light most favorable to the State, giving the State the benefit of all favorable inferences reasonably drawn from the evidence. *Graham v. State*, 120 So. 3d 382, 386-87 (Miss. 2013) (citations omitted). "If the facts and inferences so considered point in favor of the defendant on *any* element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," this Court must reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)) (emphasis in original). We review a challenge to the sufficiency of the

4

evidence on the last occasion that the trial court ruled on the sufficiency of the evidence. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). In this case, the last occasion on which the trial court ruled on the sufficiency of the evidence was in its denial of Henley's request for a peremptory instruction.

## DISCUSSION

### I. Whether the trial court erred in denying Henley's request for a peremptory instruction.

¶9. Henley argues that he was entitled to a peremptory instruction because the evidence presented by the State was legally insufficient to prove that he intended to use the tools in question to aid in the commission of a burglary.

¶10. Section 97-17-35 of the Mississippi Code makes it unlawful "for any person to have in his possession implements, tools, or instruments designed to aid in the commission of burglary, larceny or robbery[.]" Miss. Code Ann. § 97-17-35 (Rev. 2006). This Court has interpreted the statute to include the following elements: "(1) adaptation and design of the tool or implement for breaking and entering; (2) possession of such tools by one with knowledge of their character, and (3) a general intent to use or employ them in breaking and entering." *Pamphlet v. State*, 271 So. 2d 403, 405 (Miss. 1972) (citing *Johnson v. State*, 246 Miss. 182, 145 So. 2d 156 (1962)). The elements of the design of the tool and the intent to use the tool are interrelated. Regarding the adaptation and design of the tool, this Court has held that "[I]t is not necessary that the tool or article be designed and made solely for use as a burglar's tool." *Fuqua v. State*, 246 Miss. 191, 199, 145 So. 2d 152, 154 (1962). Whether the tools described in the indictment were intended to be used as burglary tools is a question

5

for the jury. *Salisbury v. State*, 293 So. 2d 434, 437 (Miss. 1974). However, "[t]he carrying concealed about one's person, or in one's baggage, implements, tools, or instruments *peculiarly adapted* to aid in the commission of burglary, larceny or robbery, shall be prima facie evidence of intention to use them for such purpose." Miss. Code Ann. § 97-17-35 (Rev. 2006) (emphasis added). As for the defendant's intent, this Court has held that "[a]lthough it is not necessary to show a specific intent to use the tools in a burglary, there must be evidence either that the tools have probably been recently used for the purpose of unlawfully breaking and entering or that they are about to be used for such purpose." *Pamphlet*, 271 So. 2d at 405 (citing *McCollum v. State*, 197 So. 2d 252 (Miss. 1967)).

¶11.    While this Court has held that possession of ordinary tools can be punishable under Section 97-17-35, we also have recognized an "underlying harmony in our opinions as to adaptation of *ordinary* articles and tools used to burglarize." *Salisbury*, 293 So. 2d at 436 (emphasis added). "The outstanding evidence in each case [involving the possession of otherwise ordinary tools] points to at least one of the tools readily recognized as a burglary tool." *Id*. For example, in *Fuqua*, the defendant had in his possession spotlights, a box of socket wrenches, a pair of black gloves, a large flashlight, a keyhole flashlight, and two large magnets, all of which are susceptible to innocent use. *Fuqua*, 246 Miss. at 197. However, the defendant also possessed a box of 150 skeleton keys, recognized as tools peculiarly adapted to aid in the commission of a burglary, along with a police badge and a stolen firearm. *Id*. at 198. This Court affirmed the defendant's conviction for possession of burglary tools, finding that his unexplained possession of the numerous skeleton keys was

6

"strong evidence that they were possessed for a felonious purpose."[1] *Id.* at 200. The other articles found in the defendant's possession were described by this Court as "useful adjuncts to burglar's tools," and the defendant's possession of them became unlawful when the evidence showed that the defendant intended to use them in combination with the skeleton keys and firearms for an unlawful purpose. *Id*. at 199. *See also McCollum*, 197 So. 2d at 256 (possession of crowbars, hammers, and a bolt cutter, along with a "burglar alarm jumper," a device used to circumvent the "setting off" of a burglar alarm); *Corn v. State*, 250 Miss. 157, 159, 164 So. 2d 777, 778 (1964) (possession of sledgehammer to which a chisel had been welded, a tool commonly used by burglars to break open safes).

¶12. In each of the cases cited above, the defendant's concealed possession of a tool peculiarly designed to aid in the commission of a burglary – skeleton keys, a burglar alarm jumper, a modified sledgehammer – served as prima facie evidence of the defendant's intent to use that tool in the commission of a burglary. However, this Court has never affirmed a defendant's conviction for possessing burglary tools in a case where the evidence did not point to at least one tool peculiarly designed as a burglary tool. The Court of Appeals has affirmed a defendant's conviction in such a case, but only upon proof that the defendant actually had committed a burglary. *Peters v. State*, 920 So. 2d 1050, 1053 (Miss. Ct. App. 2003). In *Peters*, the defendant was charged with possession of burglary tools, and with the burglary of two county-owned mechanic shops. *Id*. Police officers recovered a small

---

[1] This Court noted that cases from other jurisdictions reveal that possession of skeleton keys probably has resulted in more convictions for possession of burglary tools than any other implement. *Fuqua*, 246 Miss. at 200.

crowbar, wire cutters, vice grips, two screwdrivers, and a pair of sunglasses from the defendant's vehicle. *Id.* At the defendant's trial, a shop employee testified that the sunglasses belonged to him and had gone missing after the burglary. *Id.* He also recognized the wire cutters and screwdrivers as tools used in the shop, but he did not recognize the crowbar. *Id.* The State also presented an expert witness who testified that shoeprints found at the crime scenes possessed "all the class characteristics" of the shoes the defendant was wearing when he was arrested. *Id.* On appeal, the defendant argued that the crowbar he possessed was an ordinary tool, and that the State had failed to prove that he intended to use the crowbar for an unlawful purpose. *Id.* at 1054. The Court of Appeals rejected this argument, finding that the State's evidence was sufficient "to show beyond a reasonable doubt that Peters possessed the crowbar knowing of its character, and that he intended to use, or had in fact used the crowbar to burglarize the county property." *Id.* at 1055.

¶13.    This Court has reversed a defendant's conviction based on the State's failure to prove the element of felonious intent where the defendant possessed only ordinary tools. ***Pamphlet v. State***, 271 So. 2d 403 (Miss. 1972). In ***Pamphlet***, a tow-truck operator was towing the defendant's car out of a ditch when he noticed various tools inside the vehicle. *Id.* at 403-404. The truck operator informed a police officer of what he had seen in the vehicle. *Id.* at 404. The officer arrived at the scene, observed the tools inside the vehicle, and placed the defendant under arrest. *Id.* The officer then searched the car and found a pistol and some ammunition in the trunk. *Id.* The defendant was convicted of possession of burglary tools, but this Court reversed the conviction, finding that the State had presented no evidence showing that the defendant had intended to use the tools to commit a burglary. *Id.* The

8

officer was not investigating a burglary, there was no evidence of an attempted burglary, and there was no proof that the defendant had used the tools found in his vehicle for any unlawful purpose or that he had intended to do so. *Id.* The evidence presented to the jury proved only that the defendant had unconcealed, ordinary tools lying on the back seat and floorboard of his car. *Id*. at 405. Because the State had presented insufficient evidence of felonious intent, this Court held that the trial court had erred in refusing to give the defendant's peremptory instruction. *Id.* at 404.

¶14. Viewing the evidence in the light most favorable to the prosecution, we find that the evidence in this case is more akin to *Pamphlet* than *Peters*. Henley does not contest his possession of the tools in question, but none of the tools he possessed was peculiarly adapted to be used as a burglary tool. Therefore, the State was required to present more specific evidence "either that the tools have probably been recently used for the purpose of unlawfully breaking and entering or that they are about to be used for such purpose." *Pamphlet*, 271 So. 2d at 404. We find that the State presented no such proof. Dearing was not investigating a burglary, nor was there any evidence of an attempted burglary, when Henley was discovered on the property. The State presented evidence that the gate to the property's front entrance had cut marks on it, but there was no proof that Henley's bolt cutters, or any bolt cutters for that matter, had produced the cut marks. Henley's presence on the property after business hours may raise suspicion, but this evidence alone fails to prove that he intended to use the tools in question to aid in the commission of a burglary. Unlike the defendant in *Peters*, who was found in possession of stolen property and whose shoes matched prints at the scene of a burglary, Henley was simply found in his vehicle with

9

unconcealed tools that any mechanic or handyman would likely possess. The jury could only speculate regarding Henley's intent for possessing those tools. After reviewing the record in this case, we find that the State failed to present sufficient evidence "reveal[ing] circumstances from which it may be inferred *beyond a reasonable doubt* that [Henley] intended that he . . . use the article or articles in aid of [a] burglary or other similar crime." *Fuqua*, 246 Miss. at 199. Accordingly, we find that the trial court should have granted Henley's request for a peremptory instruction.

**II.      Whether the trial court erred in denying Henley's motion for new trial.**

¶15.   Because we are reversing the trial court's judgment based on the sufficiency of the evidence, it is unnecessary to discuss the weight of the evidence in this case.

**CONCLUSION**

¶16.   Because the State failed to present evidence sufficient to prove Henley's felonious intent beyond a reasonable doubt, we reverse and render Henley's conviction and sentence.

¶17.   **REVERSED AND RENDERED.**

**KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., LAMAR AND PIERCE, JJ. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., LAMAR AND PIERCE, JJ.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶18.   Because the State presented sufficient evidence to sustain a conviction for possession of burglary tools, I respectfully dissent.

10

¶19. When we review the sufficiency of the evidence to support a criminal conviction, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences which may be drawn from the evidence.[2] Because this case involves the possession of ordinary tools – as opposed to tools specifically designed to effectuate burglaries – the majority concludes that the State failed to prove felonious intent by showing "either that the tools have probably been recently used for the purpose of unlawfully breaking and entering or that they are about to be used for such purpose."[3]

¶20. But the majority errs by ignoring the considerable circumstantial evidence of felonious intent presented by the State. Dearing located Derrick Henley trespassing on the property of Central Mississippi Recycling in the middle of the night. Henley was driving around the property with his headlights off, and the property's main entrance gate – a gate that ordinarily is closed at the end of the work day – had been loosened to allow entry. When Henley saw Dearing, Henley attempted to leave the property, coming to a stop three hundred yards from the entrance, where Dearing found Henley in possession of pliers, bolt cutters, screwdrivers, wrenches, and a socket set.

¶21. Henley attempted to explain his presence on the property by claiming that he needed a place to turn around. But a reasonable jury could find that the State refuted Henley's story with the circumstantial evidence stated above. And while the majority is correct to state that a mechanic may very well have all of the tools Henley possessed in his car, a reasonable jury

---

[2]***Bateman v. State***, 125 So. 3d 616, 623, 24 (Miss. 2013).

[3]Maj. Op. ¶ 10 (quoting ***Pamphlet v. State***, 271 So. 2d 403, 405 (Miss. 1972) (citing ***McCollum v. State***, 197 So. 2d 252 (Miss. 1967)).

could find an innocent explanation unreasonable because Henley possessed those tools while trespassing in the middle of the night. Further, the jury was justified in finding criminal intent from the fact that Henley attempted to leave the property upon seeing law enforcement personnel.

¶22. This Court repeatedly has held that the State may prove the intent to distribute a controlled substance through nothing more than the amount possessed.[4] Certainly, the plethora of incriminating circumstantial evidence in this case is sufficient.

**RANDOLPH, P.J., LAMAR AND PIERCE, JJ., JOIN THIS OPINION**.

**RANDOLPH, PRESIDING JUSTICE, DISSENTING:**

¶23. Our standard of review for a challenge to the sufficiency of evidence has been repeated so often that supporting citations serve little value – we review the evidence in the light most favorable to the State. Today's majority fails to follow this established rule. I respectfully dissent.

¶24. Henley was indicted under Mississippi Code Section 97-17-35 for "willfully, unlawfully and feloniously possess[ing] tools designed to aid in the commission of a burglary, to-wit: bolt cutters, pliers and a flashlight . . . ." *See* Miss. Code Ann. § 97-17-35 (Rev. 2006). Those tools are designed for a lawful use, but a tool "may be designed for a lawful use and still be a burglar's tool." *Fuqua v. State*, 145 So. 2d 152, 154 (Miss. 1962). Thus, Henley's possession of bolt cutters, pliers, and a flashlight "may or may not be unlawful . . . depending on whether the evidence reveals *circumstances from which it may*

---

[4]*Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985) (citing *Bryant v. State*, 427 So. 2d 131, 132 (Miss. 1983)).

12

*be inferred* beyond a reasonable doubt that [Henley] intended" to use those tools "in aid of burglary or some other similar crime." ***Id***. at 155 (emphasis added). The evidence is "sufficient if the circumstances justify the inference that the [tools] were possessed for such criminal purpose." ***Id***. After the trial court rejected Henley's motion for a directed verdict, a jury found him guilty of the crime charged based on the circumstances surrounding his possession of the tools. Subsequently, the trial court denied Henley's motion for a new trial which challenged his conviction on the same grounds.

¶25.  The circumstances surrounding Henley's apprehension in the middle of the night at Central Mississippi Recycling in Philadelphia, Mississippi, were sufficiently established at trial. The facility manager testified that, at the close of business prior to Henley's arrest, he secured the entrance to the facility with a cable and lock. After midnight that same evening, Philadelphia police officer Jonathan Dearing was patrolling the area and noticed that the cable was down. Upon closer investigation, Dearing observed that the "cable . . . appeared to [have] fresh cut marks on it" and "the cable clamps had been loosened." Dearing entered the facility and "observed a vehicle . . . coming around the side of [a] building with its headlights off[,]" more than 300 yards from the entrance. Upon spotting Dearing's patrol car, Henley turned his headlights on and attempted to exit.

¶26.  Dearing testified that, after stopping the vehicle more than 300 yards from the gate, he approached the defendant's vehicle and saw "a pair of pliers on the center floorboard . . . and, on the passenger's side floorboard, [he] noticed a pair of bolt cutters." He testified that both were within Henley's reach. Dearing further testified that, upon searching Henley, he "found . . . a small flashlight in his front left pocket." Henley's only explanation for his

13

presence at that location and time was that he was lost and looking for a place to turn around – an explanation reasonable jurors and the trial court obviously rejected, perhaps based on Henley's driving without his headlights on after midnight at a distance of more than 300 yards from the front gate and testimony that there was "plenty of room" to turn around at the gate without entering the property.

¶27. Viewing the evidence in the light most favorable to the State, sufficient evidence established that Henley entered the property with bolt cutters, pliers, and flashlight for a criminal purpose. Henley was found after midnight on property where he had no lawful right to be – property which earlier had been secured by a cable that was subsequently found on the ground with "fresh cut marks" and the "cable clamps loosened." He was found riding around the facility in the middle of the night with his headlights off, and, upon seeing Dearing's patrol car, he attempted to exit. The bolt cutters and pliers were on the front floorboard of Henley's car, and the flashlight was found in his pants pocket, all within accessible reach. Thus, I would affirm the trial court's conviction and sentence.

**DICKINSON, P.J., LAMAR AND PIERCE, JJ., JOIN THIS OPINION.**