IRVING, P.J.,
for the Court:
¶ 1. On November 2, 2010, a jury convicted London Williams Jr. of incest. The Warren County Circuit Court sentenced Williams to ten years in the custody of the Mississippi Department of Corrections (MDOC), with seven years to serve, three years suspended, and five years of post-release supervision. On December 1, 2010, Williams filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court denied. Feeling aggrieved, Williams appeals and argues that: (1) he received ineffective assistance of counsel; (2) the circuit court erred in denying his motions for a directed verdict and a JNOV; (3) the circuit court erred in denying his motion for a new trial; (4) the circuit court erred in allowing a nurse to testify as to medical causation; (5) the circuit court erred in excluding the testimony of the physician who performed the sexual-assault examination; (6) the circuit court erred in allowing testimony from the State’s forensic DNA analyst; (7) the incest statute violates his due process and equal protection rights; (8) his confession was involuntary; (9) the circuit court erred in refusing jury instruction D-12; and (10) his sentence is illegal.
¶ 2. Because Williams’s sentence is illegal, we vacate his sentence and remand this case for resentencing. As to the remaining issues, we affirm.
FACTS
¶ 3. On May 6, 2010, Williams met his twenty-year-old daughter, Keyera Sias, at the parking lot of a Fred’s retail store in Vicksburg, Mississippi. Williams testified that Sias had been constantly calling him and asking to spend time with him, and they ultimately agreed to meet on the day in question. Williams and Sias left Fred’s and drove to a local convenience store where they purchased lunch. Sias then drove Williams’s car back to his house.[1] However, when they arrived, a lawn-service truck was partially blocking the driveway, so Williams took over driving and parked the car in his garage. Williams and Sias went inside the house, and Williams took his lunch into his bedroom while Sias went to the living room to work on an employment application that she had picked up from Fred’s.
¶ 4. Soon after, Sias entered Williams’s bedroom and asked for help completing her application. As Williams was helping Sias, he noticed that the skin on her back was dry, so he offered to put lotion on her. *680 After Williams applied the lotion, he left Sias on the bed and went outside to pay the lawn service. As this point, Sias’s and Williams’s stories diverge. Sias testified that when Williams returned, he held her down on the bed, removed her clothes, and raped her. Williams testified that when he returned, Sias was lying on the bed topless and with her pants unbuttoned. According to Williams, he and Sias then proceeded to have consensual sex.
¶ 5. Afterward, Williams drove Sias to the local mall. Sias worked at a retail store named Hollidays Fashion. Sias had recently been accused of stealing money from the store, and the store’s manager had called Sias earlier that day and asked her to come to the store to discuss the incident. Sias was ultimately fired. Sias then called her cousin to come pick her up, and she revealed that Williams had allegedly raped her. Sias’s cousin called the police, and Sias went to the emergency room at River Region Medical Center, where she received a forensic examination for evidence of sexual assault.
¶ 6. Sias’s mother called Williams and, told him that Sias had accused him of raping her. Williams, who worked as an investigator with the Warren County Sheriffs Department, immediately notified Sheriff Martin Pace regarding the allegations. Sheriff Pace then contacted Lieutenant Wayne Wasson, with the Mississippi Bureau of Investigation (MBI), and asked him to lead the investigation. Williams gave a statement to Lieutenant Wasson on the day of the incident. In the statement, Williams denied that any sexual contact had occurred between him and Sias. Williams also agreed to give a DNA sample. On May 13, 2010, Williams gave a statement to Master Sergeant Ricky Dean in which he admitted to having sex with Sias.
¶ 7. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Ineffective Assistance of Counsel

¶ 8. Williams claims that he received ineffective assistance of counsel because his counsel (1) failed to file a motion to suppress his confession, (2) failed to file a motion under Rule 412 of the Mississippi Rules of Evidence to inquire into Sias’s prior sexual behavior, (3) failed to timely file a witness list, which contained the name of a witness prepared to offer exculpatory evidence, (4) submitted a jury instruction with the wrong defendant’s name listed, and (5) failed to inform Williams of his right not to testify at trial.
¶ 9. While the Mississippi Supreme Court has stated that challenges to the effectiveness of counsel are “more appropriately brought during post-conviction proceedings” rather than on direct appeal, an appellate court may “address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record.” Parker v. State, 30 So.3d 1222, 1232 (¶36) (Miss.2010) (citations omitted). Because we find that the facts and issues related to Williams’s claim of ineffective assistance of counsel are apparent from the record, we will address the merits of his claim.
¶ 10. To succeed in a challenge to the effectiveness of counsel, Williams must prove that his attorney was deficient and that this deficiency prejudiced him. Parker, 30 So.3d at 1233 (¶ 37) (citing Strickland v. Washington, 466 U.S. 668, 687-696, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Furthermore, he must overcome the “strong but rebuttable presumption that counsel’s conduct falls within the wide *681 range of reasonable professional assistance.” Id. (citations omitted). Finally, “[o]nly where it is reasonably probable that but for the attorney’s errors, the outcome of the trial would have been different, will [an appellate court] find that counsel’s performance was deficient.” Id. (citations omitted).

a. Motion to Suppress

¶ 11. Williams contends that his counsel was deficient for failing to attend his May 18, 2010 meeting -with Master Sergeant Dean, where Williams admitted to having sex with Sias, and for failing to move to suppress the statement. Our supreme court has previously held that a “defendant’s Sixth Amendment rights are not violated by questioning in the absence of his attorney unless the defendant has asserted his right to an attorney.” Sanders v. State, 801 So.2d 694, 700 (¶24) (Miss.2001) (citing Wileher v. State, 697 So.2d 1087, 1096 (Miss.1997)). Lieutenant Wasson, who was also present for the May 13 interview, testified that Williams’s attorney brought him to the interview. However, based on our review of Williams’s audio-recorded statement, his attorney was not present during the giving of the statement. At one point during the interview, Williams asked Master Sergeant Dean for permission to call his attorney. Master Sergeant Dean allowed the call. Williams placed the call and then continued to answer questions. He never requested the presence of his attorney. Furthermore, Lieutenant Wasson and Master Sergeant Dean testified that Williams was advised of his Miranda[2] rights and that he signed a waiver of, those rights.
¶ 12. Based on the record before us, “it is difficult to see how the [circuit] court, given the proper standard of review, would have excluded the statements.” Davis v. State, 743 So.2d 326, 336 (¶ 11) (Miss.1999) (refusing to find ineffective assistance of counsel where counsel failed to file a motion to suppress defendant’s police statements). Furthermore, our supreme court has explained that “it does not appear that counsel should be required to file frivolous motions.” Id. Therefore, we cannot say that Williams’s attorney was ineffective for failing to attend Williams’s meeting with MBI officers or for failing to file a motion to suppress his statement. This issue is without merit.

b. Rule M2 Motion

¶ 13. Williams asserts that his attorney was ineffective for' failing to file a Rule 412 motion to allow inquiry into Sias’s past sexual behavior.[3] Williams was indicted for sexual battery and incest; however, the jury found him not guilty of sexual battery. As the State correctly points out, evidence of Sias’s past sexual conduct was not relevant to Williams’s incest charge. Instead, the State only needed to prove that Williams had sex with his *682 daughter and that he knew that she was his daughter at the time. See Miss.Code Ann. § 97-29-5 (Rev. 2006); Keeton v. State, 549 So.2d 960, 961 (Miss.1989). Williams testified to both elements at trial. Furthermore, “ ‘counsel’s choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy’ and cannot give rise to an ineffective[-]assistance[-]of[-]eounsel claim.” Carr v. State, 873 So.2d 991, 1003 (¶27) (Miss.2004) (quoting Cole v. State, 666 So.2d 767, 777 (Miss.1995)). This issue is without merit.

c.Witness List

¶ 14. Williams contends that his attorney was ineffective for failing to timely file a witness list that included the name of a witness expected to give exculpatory testimony. On October 26, 2010, less than one week before trial, Williams’s attorney submitted a witness list that included the name “Patricia Bernice Jones.” The State filed a motion to exclude the witness because the list was not filed timely; the address for the witness was incorrect; and Williams’s attorney had failed to provide the substance of the witness’s testimony. At the hearing on the motion, the State also argued that the witness’s name was incorrect. Patricia’s full name is “Patricia Jones Williams.” She is Williams’s ex-wife, and she was expected to testify that Sias had allegedly revealed that “she was not telling the truth” when she had spoken to MBI officers.
¶ 15. Even if Williams’s attorney was ineffective for failing to timely disclose his witness list, we fail to see how this prejudiced Williams, especially where Williams admitted in his testimony that he and Sias had sex. Therefore, Williams has failed to satisfy the standard announced in Strickland. This issue is without merit.

d.Jury Instruction

¶ 16. Williams argues that his attorney was ineffective for submitting a jury instruction with the wrong defendant’s name listed. Jury instruction D-3 listed the defendant’s name as “Ronnie Walls.” However, based on our review of the record, the final version of the instruction given to the jury omitted the portion containing the wrong name. Thus, this issue is without merit.

e.Right Not to Testify

¶ 17. Williams contends that his attorney failed to advise him of his right not to testify at trial. However, the record belies Williams’s contention. The circuit court specifically asked Williams whether he had had the opportunity to speak to his attorney about whether he should testify. Williams indicated that he had. Thus, this issue is without merit.

2. Motions for a Directed Verdict and a JNOV

¶ 18. Williams argues that the circuit court erred in denying his motion for a directed verdict and his motion for a JNOV. “In a criminal proceeding, motions for a directed verdict and [a] judgment notwithstanding the verdict (JNOV) challenge the legal sufficiency of the evidence supporting the guilty verdict.” Croft v. State, 992 So.2d 1151, 1157 (¶24) (Miss.2008) (citing Randolph v. State, 852 So.2d 547, 554 (¶ 16) (Miss.2002)). An appellate court reviews a circuit court’s decision to deny a motion for a directed verdict under the same standard of review as a motion for a JNOV. Id. “Because each requires consideration of the evidence before the court when made, [an appellate court] properly reviews the ruling on the last occasion the challenge was made in the trial court.” Id. (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). This occurred when the circuit court denied *683 Williams’s motion for a JNOV. Reversal is warranted only if “after viewing all the evidence in the light most favorable to the verdict, one or more of the elements of the charged offense is such that reasonable and fair-minded jurors could only find the accused not guilty.” Id. (internal quotations and citations omitted).
 ¶ 19. The statute proscribing incest requires proof of “a single act of adultery or fornication” between “persons who are prohibited from marrying by reason of blood.” Miss.Code Ann. § 97-29-5. Additionally, the defendant must have “full knowledge of the relationship between himself and the other participant.” Kee-ton, 549 So.2d at 961 (quoting Smith v. State, 108 Ala. 1, 19 So. 306, 306 (1895)). Williams admitted during his testimony that he had sex with Sias and that he knew she was his daughter. Based on Williams’s testimony, there was sufficient evidence to support his conviction of incest. This issue is without merit.

3. Motion for a New Trial

¶ 20. Alternatively, Williams claims that the circuit court erred in denying his motion for a new trial. “As distinguished from a motion for a directed verdict or a JNOV, a motion for a new trial asks to vacate the judgment on the grounds related to the weight of the evidence, not sufficiency of the evidence.” Coleman v. State, 926 So.2d 205, 208 (¶ 14) (Miss.2006) (quoting Purnell v. State, 878 So.2d 124, 129 (¶18) (Miss.Ct.App.2004)). When reviewing a circuit court’s decision to deny a motion for a new trial, the evidence is considered “in the light most favorable to the verdict.” Wilkins v. State, 1 So.3d 850, 854 (¶ 11) (Miss.2009) (quoting Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)). Therefore, an appellate court will order a new trial only where the verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (quoting Bush, 895 So.2d at 844 (¶ 18)).
¶ 21. Based on Williams’s testimony at trial, we fail to see how the jury’s verdict is against the overwhelming weight of the evidence. This issue is without merit.
J. Nurse’s Testimony
¶ 22. Williams argues that the circuit court erred in allowing a nurse to testify as to medical causation. Nurse Claudia Fridge, who is a certified sexual assault nurse examiner, testified that there were no lacerations or tears on Sias’s vagina. Nurse Fridge further testified that in cases of sexual assault, medical professionals do not always expect to find tearing or lacerations. Williams’s counsel objected to the testimony, and the circuit court sustained the objection. Nonetheless, the prosecution continued to question Nurse Fridge regarding the absence of vaginal injuries even in cases of forcible rape. Williams’s counsel objected and then moved for a mistrial, which the circuit court denied.
¶ 23. Nurse Fridge’s testimony was relevant only to the charge of sexual battery, of which the jury found Williams not guilty. Evidence regarding the presence or absence of vaginal tearing was not relevant to the charge of incest, of which Williams was ultimately convicted. Consequently, any error in admitting Nurse Fridge’s testimony was harmless and “cured by the verdict.” Williams v. State, 797 So.2d 372, 377 (1113) (Miss.Ct.App.2001) (citation omitted) (holding that errors in the admission or exclusion of evidence that are cured by the verdict do not warrant reversal).

*684
5. Physician’s Testimony

1124. Williams argues that the circuit court erred in excluding the testimony of the doctor who performed Sias’s pelvic exam in conjunction with the sexual-assault examination. However, based on our review of the record, the circuit court never ruled to exclude her testimony. The doctor was a witness for the State, whom the State released without calling. Williams made no objection to the State’s decision to release the doctor. Furthermore, the doctor’s testimony, like that of Nurse Fridge, was only relevant to the charge of sexual battery, of which the jury found Williams not guilty. This issue is without merit.

6. DNA Expert's Testimony

¶ 25. Williams argues that the circuit court erred in allowing the State’s forensic DNA analyst, Kathryn Moyse, to testify that Williams’s blood was used to establish his paternity of Sias. Based on our review of the record, Williams has misread Moyse’s testimony. Moyse testified that a suspect’s DNA profile may be developed either through a blood sample or a sample taken from the mouth. However, she never testified that Williams’s DNA profile was obtained from a blood sample. Instead, she testified that Sias’s DNA profile was obtained using a blood sample. This issue is without merit.

7. Incest Statute

¶ 26. Williams argues that the State’s application of the incest statute violated his right to due process and his right to equal protection under the law. Specifically, Williams argues that the language of the incest statute imposes a duty of responsibility on “persons,” not just males engaging in the unlawful act.[4] Therefore, according to Williams, because the jury found him not guilty of sexual battery, it necessarily determined that Sias consented to the incestuous act with her father and should likewise be subject to criminal prosecution. However, our supreme court has previously rejected Williams’s exact argument. See Keeton, 549 So.2d at 961 (rejecting the argument that the incest statute’s use of the word “persons” means that both parties should be “punished for running afoul of the law”). The Keeton court further stated:
The defendant will be held to answer for his own conduct which is obviously willingly done on his part, and it is his acts which complete the crime of incest. The defendant’s guilt is measured by his knowledge and his intent and not by the knowledge or intent of his daughter on whom he committed the offense.
Id. (citation omitted). This issue is without merit.

8.Involuntary Confession

¶ 27. Williams asserts that the statement he gave to officers admitting that he had sex with Sias was involuntary because he was not given a Miranda warning, nor did he offer to sign a waiver. Furthermore, he contends that the circuit court erred in admitting Lieutenant Wasson’s and Master Sergeant Dean’s testimonies that they advised Williams of his Miranda *685 rights and that he signed a waiver of those rights.
¶ 28. At the outset, we note that Williams failed to object at trial to the testimony he now challenges regarding his police statement. Therefore, he “must rely on plain error to raise the issue on appeal, because otherwise it is procedurally barred.” Parker, 30 So.3d at 1227 (¶ 14) (citing Walker v. State, 913 So.2d 198, 216 (¶45) (Miss.2005)). “Plain error exists where such error affects the defendant’s substantive/fundamental rights, even though no objection was made at trial.” Id. Our supreme court has previously refused to review an alleged Miranda violation for plain error. See Williams v. State, 971 So.2d 581, 590 (¶ 29) (Miss.2008) (explaining that “[a]s a general rule, constitutional questions not asserted at the trial level are deemed waived”). Because Williams failed to object to the above-mentioned testimony regarding his statement, this issue is procedurally barred.

9. Jury Instruction D-12

¶ 29. Williams alleges that the circuit court erred in refusing jury instruction D-12. Instruction D-12 reads as follows:
This Court instructs the jury that [section] 97-29-5 states:
Persons being within the degrees within which marriages are prohibited by law to be incestuous and void ...[,] or persons who are prohibited from marrying by reason of blood and between whom marriage is declared to be unlawful and void, who shall cohabit, or live together as husband and wife, or be guilty of a single act of adultery or fornication.
Williams asserts that the circuit court should have granted instruction D-12 because it tracks the statutory language of section 97-29-5. Our supreme court has consistently held that “instructions in a criminal case which follow the language of a pertinent statute are sufficient.” Rubenstein v. State, 941 So.2d 735, 772 (¶ 155) (Miss.2006) (quoting Byrom v. State, 863 So.2d 836, 880 (¶ 162) (Miss.2003)). However, jury instructions are reviewed as a whole and not in isolation. Bailey v. State, 78 So.3d 308, 315 (¶20) (Miss.2012). Therefore, an instruction’s legal sufficiency does not prevent its exclusion where the instruction is “covered fairly elsewhere in the instructions.” Id. (quoting Hearn v. State, 3 So.3d.722, 738 (¶45) (Miss.2008)). Based on our review of the record, the elements of incest were adequately addressed in the other instructions put before the jury. Specifically, instruction S-2 states, in pertinent part:
The Court instructs the Jury that if you unanimously find from the evidence in this case ... beyond a reasonable doubt, that the defendant, London Williams, Jr., on or about May 6, 2010, in Warren County, Mississippi, did:
1. willfully, unlawfully[,] and felo-niously engage in a single act of adultery or fornication;
2. with Keyera Sias;
3. his natural daughter
then[,] and in that event, the defendant, London Williams, Jr., is guilty of incest and it is your sworn duty to so find.
The Court further instructs the Jury that if the State fails to prove any of the above elements ... beyond a reasonable doubt, then[,] in that event[,] you must find the defendant, London Williams, Jr., not guilty.
¶ 30. Because the elements of incest were adequately covered in instruction S-2, the circuit court did not abuse its discretion in refusing instruction D-12. This issue is without merit.

*686
10. Illegal Sentence

¶ 31. Williams contends that his sentence is illegal because it exceeds the maximum sentence for incest. Section 97-29-5 provides that a person who is found guilty of incest “shall be punished by imprisonment in the penitentiary for a term not exceeding ten (10) years.” Furthermore, Mississippi Code Annotated section 47-7-34(1) (Rev. 2011) provides, in pertinent part:
When a court imposes a sentence upon a conviction for any felony committed after June 30, 1995, the court, in addition to any other punishment imposed if the other punishment includes a term of incarceration in a state or local correctional facility, may impose a term of post-release supervision. However, the total number of years of incarceration plus the total number of years of post-release supervision shall not exceed the maximum sentence authorized to be imposed by law for the felony committed.
(Emphasis added). The circuit court sentenced Williams to ten years in the custody of the MDOC, with seven years to serve, three years suspended, and five years of post-release supervision. As Williams correctly points out, the period of incarceration (seven years) plus the period of post-release supervision (five years) exceeds the maximum sentence allowed for incest (ten years). Therefore, Williams’s sentence is illegal. Consequently, we remand this case to the circuit court for resentencing.
¶ 32. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF INCEST IS AFFIRMED. THE SENTENCE OF TEN YEARS, WITH SEVEN YEARS TO SERVE, THREE YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS VACATED, AND THIS CASE IS REMANDED FOR THE LIMITED PURPOSE OF RE-SENTENCING CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. Williams shared the home with his current wife, who was at work at the time. Sias did not live in the home.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1961).

. Rule 412(c)(l) provides:
If the person accused of committing a sexual offense intends to offer ... evidence of specific instances of the alleged victim’s past sexual behavior or evidence of past false allegations made by the alleged victim, the accused shall make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph shall be served on all other parties and on the alleged victim.

. Section 97-29-5 provides:
Persons being within the degrees within which marriages are prohibited by law to be incestuous and void, or persons who are prohibited from marrying by reason of blood and between whom marriage is declared to be unlawful and void, who shall cohabit, or live together as husband and wife, or be guilty of a single act of adultery or fornication, upon conviction, shall be punished by imprisonment in the penitentiary for a term not exceeding ten (10) years.