CARLTON, J.,
for the Court:
¶ 1. A jury in the Quitman County Circuit Court convicted Andranette Williams of felonious child abuse. The trial court then sentenced Williams to twenty years in the custody of the Mississippi Department of Corrections (MDOC), followed by five years of post-release supervision.
¶ 2. Williams now appeals, asserting the following issues: (1) the jury’s verdict was based on insufficient evidence; (2) the jury’s verdict was against the overwhelming weight of the evidence; and (3) the trial court erroneously admitted the photographs into evidence.
¶ 3. Finding no error, we affirm.
FACTS
¶ 4. On the morning of January 21, 2010, Dalisha Davis discovered that her cousin’s sixteen-month-old daughter, K.W., had suffered severe burns around large portions of her lower body.[1] The night prior to the discovery of K.W.’s injuries,. K.W. stayed at the home of Mary Davis, K.W.’s great-grandmother. Several family members resided at Mary’s home, and on the evening in question, some of the residents of the home testified that they saw or heard KW.’s mother, Williams, in the bathroom with K.W., attempting to potty train her.
¶ 5. Specifically, Mary testified at trial that she heard K.W. hollering and crying after Williams took her into the bathroom. Mary claimed, however, that she never saw K.W. after Williams and K.W. came out of the bathroom, but when she woke *107 up the next morning, she could not stand to look at KW.’s feet because of the peeling skin on them.
¶ 6. Kenyana Tennin, K.W.’s cousin, tes: tified that while Williams was in the bathroom attempting to potty train K.W. on the evening of January 20, 2010, Tennin saw Williams using a belt to spank K.W., who was on the toilet. Tennin claimed that she heard K.W. fall off of the toilet and hit her head on the counter. Tennin also testified that Williams was the only person who bathed K.W. while at Mary’s home, and that she heard bath water running while Williams and K.W. were in the bathroom.
¶ 7. Chantella Gayden, another of K.W.’s cousins, testified that on the evening in question, the bathroom door was closed, but she heard K.W. crying. She testified that after she heard Williams spanking K.W. in the bathroom, she saw Williams put ice over KW.’s eye.
¶ 8. Dalisha also resided at Mary’s residence at the time K.W. was injured. Dali-sha testified that when she returned to Mary’s home from work on the night in question, she saw Williams and Charles Willingham, K.W.’s father, outside with K.W. wrapped in a sheet. After asking them why they were outside, Williams told Dalisha that K.W. had a fever. Dalisha stated that she then entered the home and found steaming hot water in the bathtub, and she had to use an object to drain the water due to its high temperature. The next morning, January 21, 2010, Dalisha discovered blisters and peeling skin on KW.’s legs as she took KW.’s clothes off.[2] Dalisha called for an ambulance to come to the home. After observing K.W.’s injuries, the paramedics dispatched Chief Rena Wade-Taylor to the scene.
¶ 9. Chief Wade-Taylor of the Lambert Police Department testified that she noticed a bruise under K.W.’s left eye, along with severe burns on her lower body. Chief Wade-Taylor took pictures of KW.’s injuries and her clothing. Chief Wade-Taylor testified that she asked Williams what happened to K.W., and Williams replied that she did not know. Chief Wade-Taylor testified that Williams admitted, however, to giving K.W. a bath the night before. At trial, Williams denied giving K.W. a bath on the night in question.
¶ 10. Dr. Richard Waller, the emergency-room physician at Quitman County Hospital, first treated K.W. He testified that K.W. suffered third-degree hot-water burns on her lower body. Dr. Waller stated that the worst of the burns were on K.W.’s feet and ankles, but he noticed burns near KW.’s genital area as well. Dr. Waller explained that the burns near KW.’s genital area were either caused by splashing hot water on K.W.’s body or intentional placement of hot water on K.W.’s body. Dr. Waller concluded that hot water caused the blisters because the burns appeared circumferential and consistent with a child being placed in hot water. He also noted that the burns could not have been caused by lotion or cream because of the depth and location of the burns. Dr. Waller explained that KW.’s injuries necessitated care by a tertiary care center.
¶ 11. Defense witness Willingham testified that K.W. never went into the bathroom on the night in question. Willing-ham testified that he knew of nothing wrong with K.W. before he and Williams left that night to return to their house. Willingham stated that he first learned of *108 KW.’s injuries the next morning when he and Williams received a call beckoning them back to Mary’s home.
¶ 12. Williams testified that on the evening in question, she braided her two daughters’ hair and put them to bed without giving K.W. a bath. Williams testified that she did not return to Mary’s house until the next morning after she received notice of KW.’s injuries. Williams claimed that she was not present at the time that K.W. suffered her injuries.
¶ 13. A Quitman County grand jury indicted Williams on one count of felony child abuse under Mississippi Code Annotated section 97-5-39(2)(a) (Rev.2006). Following a trial, a jury convicted Williams of the crime charged. The trial court sentenced Williams to twenty years in the custody of the MDOC, followed by five years of post-release supervision. Williams now appeals.
DISCUSSION
I. SUFFICIENT EVIDENCE
¶ 14. Williams argues that the State failed to prove beyond a reasonable doubt all of the elements necessary to sustain a conviction for felony child abuse. Williams claims that no witnesses testified to seeing Williams give K.W. a bath. Therefore, Williams asserts that the court erred in failing to grant her motion for a directed verdict.
¶ 15. “In a criminal proceeding, motions for a directed verdict and a judgment notwithstanding the verdict (JNOV) challenge the legal sufficiency of the evidence supporting the guilty verdict.” Williams v. State, 89 So.3d 676, 682 (¶ 18) (Miss.Ct.App.2012) (quoting Croft v. State, 992 So.2d 1151, 1157 (¶24) (Miss.2008)). Appellate courts review a decision by a trial court “to deny a motion for a directed verdict under the same standard of review as a motion for a JNOV.” Id. “Because each requires consideration of the evidence before the court when made, an appellate court properly reviews the ruling on the last occasion the challenge was made in the trial court.” Id. (citation omitted). Here, this occurred when the trial court denied Williams’s motion for a JNOV. We are mindful that “[rjeversal is warranted only if ‘after viewing all the evidence in the light most favorable to the verdict, one or more of the elements of the charged offense is such that reasonable and fair-minded jurors could only find the accused not guilty.’ ” Id. at 683 (¶ 18).
¶ 16. Williams was charged with felony child abuse under Mississippi Code Annotated section 97-5-39(2)(a), which provides:
Any person who shall intentionally (i) burn any child, (ii) torture any child or, (iii) except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm, shall be guilty of felonious abuse of a child[.]
To sustain a conviction against Williams for felonious child abuse, the State had the burden of proving: (1) Williams intentionally burned K.W., and (2) her actions caused serious bodily injury to the child.
¶ 17. In addressing Williams’s argument as to the sufficiency of the evidence, we first note that “all the proof need not be direct and the jury may draw any reasonable inferences from all the evidence in the case.” Anthony v. State, 23 So.3d 611, 623 (¶ 53) (Miss.Ct.App.2009) (citation omitted). Circumstantial evidence may also be used to prove intent. Id. “Circumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence, and, in fact, ‘a conviction may be had on circumstantial *109 evidence alone.’” Id. (quoting Tolbert v. State, 407 So.2d 815, 820 (Miss.1981)). “Such ‘circumstantial evidence need not exclude every possible doubt, but only every other reasonable hypothesis of innocence.’ ” Id. (quoting Shelby v. State, 812 So.2d 1144, 1146 (¶ 5) (Miss.Ct.App.2002)). “However, ‘as is true in cases based on direct testimonial evidence, any conflicts created by the circumstantial evidence presented are for the jury to resolve.’ ” Id. (quoting Goff v. State, 14 So.3d 625, 650 (¶ 97) (Miss.2009)). Furthermore, we note that “the jury weighs the credibility of each witness when considering conflicting testimony.” Id. (quoting Shelby, 812 So.2d at 1146 (¶ 6)).
¶ 18. The State’s witnesses’ accounts of the events that took place the night K.W. was burned contradict Williams’s claim of innocence and her argument that the evidence was insufficient to support the verdict. The witnesses revealed that Williams was the only person who bathed K.W. while at Mary’s house. Their testimonies also showed that Williams was the only one in the bathroom with K.W. on the night that the injuries occurred. At least one witness testified that she heard water running in the bathtub while Williams and K.W. were in the bathroom. Further, the State presented testimony that the water in the bathtub was scorching hot and steam was rising from it. Dr. Waller’s testimony evidenced that KW.’s third-degree burns appeared fresh and severe and were likely caused from hot water. Williams and Willingham presented inconsistent testimonies with the testimonies of the State’s witnesses. Both Williams and Willingham claimed no knowledge as to how K.W., their own daughter, was burned. As stated, however, the jury resolves any conflicts created by the circumstantial evidence presented. Anthony, 23 So.3d at 623 (¶ 53).
¶ 19. Furthermore, we are mindful that the trial court in this case properly instructed the jury as to the burden associated with circumstantial evidence. The court’s instruction to the jury stated, in part:
If you find from the evidence in this case beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, that:
1. On or about or between January 20, 2010[,] and January 21, 2010, the defendant ANDRANETTE WILLIAMS, did unlawfully, intentionally and feloniously burn, whip, strike or otherwise abuse or mutilate a child, K.W., age sixteen (16) months, and
2. did cause seriously bodily injury, and
3. said abuse or mutilation was not done in self-defense, [and] not in order to prevent serious bodily harm to a third party,
then you shall find the defendant guilty of felony child abuse.
If the State has failed to prove any one or more of the above elements beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, then you shall find the defendant not guilty of felony child abuse.
¶ 20. Based on this evidence and the testimony presented at trial, sufficient evidence existed to support Williams’s conviction.[3] This issue is without merit.
*? II. WEIGHT OF THE EVIDENCE
¶ 21. Williams argues that the jury verdict was against the overwhelming weight of the evidence. “As distinguished from a motion for a directed verdict or a JNOV, a motion for a new trial asks [the court] to vacate the judgment on the grounds related to the weight of the evidence, not sufficiency of the evidence.” Williams, 89 So.3d at 683 (¶ 20) (quoting Coleman v. State, 926 So.2d 205, 208 (¶ 14) (Miss.2006)). When this Court considers a decision by a trial court “to deny a motion for a new trial, the evidence is considered ‘in the light most favorable to the verdict.’ ” Id. (quoting Wilkins v. State, 1 So.3d 850, 854 (¶ 11) (Miss.2008)). Thus, we “will order a new trial only where the verdict ‘is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’ ” Id. (quoting Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)).
¶ 22. Here, the trial court properly instructed the jury on circumstantial evidence, and we fail to see how the jury’s verdict is against the overwhelming weight of the evidence. Although conflicting testimony existed, the jury is the sole judge of witness credibility, and it is the jury’s duty to determine the weight given to the testimony. See Anthony, 23 So.3d at 623 (¶ 53). Therefore, we find that this issue is without merit.
III. ADMISSION OF EVIDENCE
¶ 23. Williams argues that the State failed to prove its case against her beyond a reasonable doubt by admissible evidence. Williams contends that the trial court erred by allowing State’s Exhibits 3A and 3B into evidence over defense counsel’s objection. These exhibits are photographs depicting severe burns on KW.’s lower body. Williams claims that the likelihood of prejudice resulting from the admission of these photographs greatly outweighed any probative value.
¶ 24. With regard to the admission of photographs into evidence, the Mississippi Supreme Court has held:
Admission of photographs by the trial court is reviewed for abuse of discretion. A decision favoring admissibility will not be disturbed absent a clear abuse of that judicial discretion. The discretion of the trial judge is almost unlimited regardless of the gruesomeness, repetitiveness, and the extenuation of probative value. Some probative value is the only requirement needed in order to support a trial judge’s decision to admit photographs into evidence. So long as a photograph has probative value and its introduction serves a meaningful eviden-tiary purpose, it may still be admissible despite being gruesome, grisly, unpleasant, or even inflammatory. A photograph has a meaningful evidentiary purpose when it: (1) aids in describing the circumstances of the killing; (2) describes the location of the body or cause of death; or (3) supplements or clarifies witness testimony.
Chamberlin v. State, 989 So.2d 320, 340 (¶ 73) (Miss.2008) (internal citations omitted).
¶ 25. Williams argues that State’s Exhibits 1A through IF, already admitted into evidence, showed K.W.’s injuries, making the admission of Exhibits 3A and 3B duplicative. We find that the State’s Exhibits 3A and 3B failed to constitute duplicative evidence since the pictures possessed probative value and served a purpose different from State’s Exhibits 1A through IF. The two photographs held a meaningful evidentiary purpose of supplementing and clarifying Dr. Waller’s expert testimony.
*111 ¶ 26. On direct examination, Dr. Waller testified that State’s Exhibits 1A through IF showed the severe burns suffered by K.W. In reviewing these exhibits, Dr. Waller stated that KW.’s injuries were “life-threatening” because they could be infected by bacteria.
¶ 27. State’s Exhibits 3A and 3B are also photographs illustrating the severity of the hot-water burns that K.W. suffered on her lower body. However, State’s Exhibits 3A and 3B served a different eviden-tiary purpose than State’s Exhibits 1A through IF. Dr. Waller testified that State’s Exhibits 3A and 3B illustrated the “natural progression” of the initial injuries based on a reasonable degree of medical certainty. Thus, State’s Exhibits 3A and 3B held a meaningful evidentiary purpose and were not duplicative. Therefore, we find that the trial court did not abuse its discretion in allowing these photographs into evidence.
¶ 28. THE JUDGMENT OF THE QUITMAN COUNTY CIRCUIT COURT OF CONVICTION OF FELONY CHILD ABUSE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY $500 TO THE CRIME VICTIMS’ COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO QUITMAN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. This Court declines to identify minor victims of abuse.

. Williams and Willingham did not stay at Mary’s home that night, but instead went to their own home. Testimony showed that K.W. stayed at Mary's house because Williams and Willingham had yet to hook up all of the utilities at their home.

. See, e.g., Rutland v. State, 60 So.3d 187, 189-91 (¶¶ 9-16) (Miss.Ct.App.2010); Anthony, 23 So.3d at 623-24 (¶¶ 54-56).