FAIR, J.,
for the Court:
¶ 1. In the early morning of October 26, 2011, Martina Jones was raped inside her home. The rapist also stole Jones’s television. An anonymous tip from Crime Stoppers, along with DNA evidence, led to the indictment of Eddie Harris.
¶ 2. Harris was convicted by a Warren County jury of burglary of a dwelling and rape. Harris then filed a motion for a judgment notwithstanding the verdict (JNOV), which the trial court denied. The court sentenced Harris to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) for burglary of a dwelling, with five years suspended and five years of post-release supervision. Harris was also sentenced to forty years for rape, to run consecutively to his burglary sentence. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 3. Harris’s challenge to the denial of his motions for a directed verdict and a JNOV is a challenge to the sufficiency of the evidence. “Because each requires consideration of the evidence before the court when made, an appellate court properly reviews the ruling on the last occasion the challenge was made in the trial court.” Williams v. State, 122 So.3d 105, 108 (¶ 15) (Miss.Ct.App.2013) (quotation and citation omitted). Here, the last ruling of the trial court was the denial of Harris’s motion for a JNOV. Our standard of review was outlined by our Mississippi Supreme Court in Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005): “[t]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction.’” (Quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). In addition, “if a review of the evidence reveals that it is of such quality *951 and weight that, ‘having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ the evidence will be deemed to have been sufficient.” Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). Harris correctly asserts that this is a circumstantial-evidence case, “in which there is neither an eyewitness nor a confession to the crime.” Simpson v. State, 993 So.2d 400, 409 (¶ 31) (Miss.Ct.App.2008) (quoting Stephens v. State, 911 So.2d 424, 437 (¶ 43) (Miss.2005)). “Circumstantial evidence need not exclude every possible doubt, but should exclude every other reasonable hypothesis consistent with innocence.” Hughes v. State, 90 So.3d 613, 630 (¶ 49) (Miss.2012).
DISCUSSION
¶4. Harris claims the evidence was not sufficient. He argues that there was no eyewitness identification of him and that the DNA evidence was legally insufficient to connect him to either crime.
¶ 5. First, Harris was convicted of burglary. Mississippi Code Annotated section 97-17-23(1) (Rev.2006) states that “[e]very person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with the intent to commit some crime therein,” is guilty of burglary. Thus, the State was required to prove the following elements beyond a reasonable doubt: “(1) the unlawful breaking and entering; and (2) the intent to commit some crime when entry is attained.” Parker v. State, 962 So.2d 25, 27 (¶ 9) (Miss.2007). For the second element of burglary, the State is required to prove the intent to commit some specific crime. Daniels v. State, 107 So.3d 961, 964 (¶ 16) (Miss.2013) (emphasis added). Here, the specific crime charged was larceny.
¶ 6. The jury heard testimony from the victim. She testified that she was home alone when her power went out. She became alarmed when she noticed the street lights and neighbors’ lights were still functional. Jones then heard someone repeatedly kicking the front door. She looked out the window, but did not see anything suspicious. Jones testified that she went to the kitchen, grabbed a serrated knife, and went back to the foyer. She saw a dark figure in the parlor, with long hair and a goatee. The intruder asked Jones for her money and purse. Jones told him that she did not have any money in the house. Jones stated that she tried to escape, but something was thrown against the left side of her face, and she fell to the floor. After she got up, the intruder ordered her to sit on the couch. She refused, so he hit her in the face and told her to part her legs. Eventually, he forced her legs open and raped her. After he raped her, the intruder asked Jones for the remote control to the television. Jones handed him the remote. The intruder then went looking through some desk drawers in the dining room, leaving the home with the television shortly after. Jones stayed on the couch with her face covered until it became light outside. She then walked to her neighbor’s house and called the police.
¶ 7. Crime scene investigator Troy Kimble testified to his investigation of the case. Investigator Kimble stated that the intruder went in the garage, walked on the porch, and somehow got paint primer on the sole of his shoes from the porch. Investigator Kimble’s investigation led him to conclude that the there was only one intruder, entering the house through the *952 door on the porch and leaving footprints in the house.
¶ 8. Officer Connie Ricketts of the Vicksburg Police Department testified that Jones described her assailant as a black male approximately six feet tall and weighing 180 pounds, with a bit of facial hair on his chin. Jones also said her attacker was dressed in all black with a hoodie type top. Officer Sandra Williams testified that the police searched for suspects fitting Jones’s description of the assailant. She explained that, in the midst of their search, the police received an anonymous tip through Crime Stoppers that led them to Harris. Officer Williams testified that the information received from the tip allowed the officers to obtain a search warrant for Harris’s residence.
¶ 9. Officer Rick McDaniel testified that, upon obtaining a search warrant of Harris’s residence, he found a pair of Nike shoes in Harris’s bedroom closet. He matched an impression made with Harris’s left Nike tennis shoe with the footprint left at the crime scene. The size of the shoes, sole patterns, and specific wear marks on the soles were identical. Officer McDaniel stated that DNA swabs were taken from the shoes and submitted to Scales Biological Laboratory for testing.
. ¶ 10. Dr. Bo Scales testified that, when testing a DNA specimen, he looks for sixteen out of the twenty-three pairs of DNA chromosomes (genetic markers); he further testified that using this method is enough to give him match frequencies of greater than 999 trillion. According to DNA expert Dr. Scales, fifteen of the sixteen markers in Harris’s DNA matched the DNA from the tennis shoes. Dr. Scales further testified that, based on those results, he was unable to exclude Harris as a contributor to the DNA found on the tennis shoes.
¶ 11. We find that there was sufficient evidence to permit a rational trier of fact to have found the essential elements of burglary beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence.
¶ 12. Second, Harris was convicted of rape. Mississippi Code Annotated section 97-3—65(4)(a) (Rev.2006) provides that rape is committed by “[e]very person who shall have forcible sexual intercourse with any person.... ” At trial the jury heard testimony from the victim. As already discussed, she testified to the events surrounding the rape. The nurse who conducted the rape exam testified that she examined Jones and took swabs from her body, including the vagina, cervix, and rectum, as well as dried secretions found on her inner thighs. The nurse also saw heavy bruising to Jones’s face. During the rape examination, the nurse found trauma to Jones’s cervix that indicated penetration. The State presented photographs of the victim’s visible wounds.
¶ 13. A total of ten potential suspects submitted buccal swabs for DNA comparison to the specimen recovered from Jones’s thigh. Dr. Scales obtained a full DNA profile from Harris’s buccal swab. He also tested a sample of dried secretions taken from Jones’s thigh during the rape exam and pulled a partial genetic profile. Dr. Scales testified that Harris’s DNA was consistent with the DNA found on Jones’s thigh. Further, Dr. Scales testified that Harris’s DNA profile was consistent with the partial DNA profile from the dried secretion found on the victim.
¶ 14. There is nothing in the record that points in favor of Harris with sufficient force that no rational trier of fact could have found the essential elements of the rape beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. See Goff v. *953 State, 14 So.3d 625, 646 (¶ 75) (Miss.2009). We find no error in the trial court judge’s denial of Harris’s motion for a JNOV. Harris’s argument is without merit.
¶ 15. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, BURGLARY OF A DWELLING, AND SENTENCE OF TWENTY-FIVE YEARS, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND COUNT II, RAPE, AND SENTENCE OF FORTY YEARS, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $10,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.