# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00050-COA

HOSAN M. AZOMANI A/K/A HOSAN AZOMANI       APPELLANT
A/K/A HOSAN MENANYA AZOMANI A/K/A DR.
AZOMANI A/K/A HOSAN AZOMANI M.D.
A/K/A DR. HOSAN M. AZOMANI

v.

STATE OF MISSISSIPPI       APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/23/2014 |
| TRIAL JUDGE: | HON. BETTY W. SANDERS |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GLENN S. SWARTZFAGER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF TWO COUNTS OF MEDICAID FRAUD, AND SENTENCED TO CONCURRENT TERMS OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE YEARS SUSPENDED, AND THREE YEARS OF PROBATION, AND TO PAY $14,715.76 IN RESTITUTION AND $44,147.28 IN CIVIL PENALTIES |
| DISPOSITION: | AFFIRMED: 08/09/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT:**

¶1. A jury sitting before the Washington County Circuit Court found Dr. Hosan M. Azomani guilty of two counts of Medicaid fraud. Dr. Azomani appeals and claims: (1) he was not tried in the proper venue; (2) the statute of limitations had expired; (3) the jury was

improperly instructed; (4) there was insufficient evidence to convict him; (5) he received ineffective assistance of counsel; and (6) the cumulative effect of the alleged errors mandates reversal of the circuit court's judgment. Finding no error, we affirm.

**FACTS**

¶2. Dr. Azomani, a pediatrician and the medical director of the Children's Medical Group of Greenville PLLC, was investigated by the Mississippi Medicaid Fraud Control Unit (MFCU). On October 19, 2010, he billed Mississippi Medicaid under "Current Procedural Terminology" (CPT) code 99215 for all fifty-six children he treated that day. And on January 3, 2011, he used the same code to bill Medicaid for the sixty-nine children he treated on that day. Using code 99215 for all children treated on those two days, he was reimbursed the highest possible amount for all office visits on those two days, for which he was paid a total of $14,715.66 by Medicaid. Experts who reviewed Dr. Azomani's records for the MFCU unanimously concluded that none of the children Dr. Azomani treated during those two days should have been billed under code 99215.

¶3. Indicted on January 13, 2014, on 13 counts of Medicaid fraud, he was tried over six days beginning October 27, 2014. On November 1, 2014, the jury found him guilty of two counts of fraudulently misusing billing code 99215, an inappropriate code for the 125 children he treated on two days. It acquitted him on the other 11 counts. At trial, the State called numerous witnesses involved with the investigation and audit of Dr. Azomani's files. Experts for the State and Dr. Azomani agreed that he improperly billed Medicaid under code 99215 for all of the patients he treated during the two days at issue. Dr. Azomani testified

2

that he did not intend to bill Medicaid improperly. Instead, he relied on a previous partial review of his files, which had incorrectly suggested that he had been properly billing under code 99215. From the verdict finding Dr. Azomani guilty of two counts of Medicaid fraud, he appeals.

## DISCUSSION

### 1. Venue

¶4. In June 2014, Dr. Azomani filed a "motion to dismiss due to incorrect venue." Citing Mississippi Code Annotated section 43-13-223(1) (Rev. 2015), he argued that the State could only prosecute him in the First Judicial District of Hinds County or the county where he lived. Since he was a resident of Madison County, Dr. Azomani claimed that venue was improper in Washington County and that the circuit court should dismiss the indictment.

¶5. At an August 6, 2014 pretrial hearing, Dr. Azomani's lawyer said that he and his co-counsel had "been engaged in some ongoing discussions with Dr. Azomani" regarding the venue motion. Dr. Azomani's lawyer requested permission "not to pursue that motion at the hearing." The circuit judge asked whether Dr. Azomani would argue the venue motion at a later date. Dr. Azomani's lawyer responded, "In all candidness . . . , we don't know we won't. The only thing I can represent . . . is that at this point this morning[,] we're asking not to call it up." Noting that there was a scheduling order, Dr. Azomani's lawyer went on to say that "we will have a final decision from [Dr. Azomani] before th[e] deadline expires as to whether . . . we are going to call it up for a hearing or just withdraw the motion." Although

3

there were two subsequent pretrial hearings, the venue motion was never mentioned again.[1]

¶6.     While arguing his motion for a directed verdict, Dr. Azomani unsuccessfully claimed that the State had failed to present sufficient evidence that he submitted the claims from Washington County, so there was insufficient evidence of venue.  But he never argued that venue was statutorily improper in Washington County because he was a resident of Madison County.

¶7.     Dr. Azomani now seeks a ruling on his venue motion under section 43-13-223(1) for the first time in this appeal.  Generally, "[t]he assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal," and "[a] trial judge will not be found in error on a matter not presented to him for decision." *Ballenger v. State*, 667 So. 2d 1242, 1256 (Miss. 1995).  But "there are exceptions to a procedural bar for errors affecting certain constitutional rights." *Foster v. State*, 148 So. 3d 1012, 1016 (¶12) (Miss. 2014).  The Mississippi Supreme Court has held that "venue is a constitutional requirement" that may be raised for the first time on appeal. *Nuckolls v. State*, 179 So. 3d 1046, 1050 (¶12) (Miss. 2015).  The supreme court has also held that "because venue is jurisdictional in criminal cases, the issue may be raised for the first time on appeal." *Rogers v. State*, 95 So. 3d 623, 630 (¶23) (Miss. 2012).  However, the supreme court has restricted the principle to direct criminal appeals. *Moreno v. State*, 79 So. 3d 508, 511 (¶11) (Miss. 2012) (finding that this Court erred in considering a venue claim that was raised for

---

[1] It is possible that after Dr. Azomani and his attorneys conferred, they chose not to go forward with the motion because they thought that Washington County would be a more favorable venue than Madison County.

the first time "on appeal from a trial court's denial of post-conviction relief").

¶8. Dr. Azomani's current venue claim is not based on Article 3, Section 26, of the Mississippi Constitution, which provides that a criminal defendant has a right to be tried "by an impartial jury of the county where the offense was committed." In other words, Dr. Azomani does not claim venue was improper in Washington County because the offenses had not been committed there. Instead, he notes that he was a Madison County resident, and claims that venue was improper in Washington County based on section 43-13-223(1), which provides that "[a]n action brought in connection with any matter under this article may be filed in the circuit court of the First Judicial District of Hinds County or in the circuit court of the county in which the defendant resides, and may be prosecuted to final judgment in satisfaction there." Thus, Dr. Azomani seeks to assert a perceived *statutory* right for the first time on appeal, as opposed to a constitutional right.

¶9. The United States Court of Appeals for the Fifth Circuit has held that "[a] defendant indicted by an instrument [that] lacks sufficient allegations to establish venue waives any future challenge by failing to object before trial." *United States v. Carreon-Palacio*, 267 F.3d 381, 392 (5th Cir. 2001). As the Fifth Circuit noted, that position is an "appropriate balance between judicial economy and safeguarding a defendant's right to be tried in a district with the requisite venue." *Id*. In a subsequent appeal, the Fifth Circuit elaborated that allowing a defendant to raise an "obvious" venue defect for the first time on appeal

> would create severe perverse incentives for criminal defendants in any case in which there are doubts over the legitimacy of venue. A defendant would be able to game the system and obtain a free second shot at an acquittal by waiting for his trial to conclude and then challenging venue in the event of a

5

conviction. Even if . . . he was well aware of the potential defect in venue, he would have every incentive to forego an improper venue claim until after the trial is over.

*United States v. Delgado-Nuñez*, 295 F.3d 494, 497 (5th Cir. 2002). As best we can tell, the Mississippi Supreme Court has not commented on the nuances between obvious venue defects and those that arise only after the presentation of evidence. Thus, it is unclear whether obvious venue defects may be waived when a defendant fails to raise them in a trial court. Dr. Azomani filed his venue motion well before his trial. By all appearances, he simply chose not to go forward with it. We are inclined to agree with the Fifth Circuit's logic regarding the waivability of obvious venue defects. And although the circumstances are different, the Mississippi Supreme Court has previously found that this Court went too far when applying the principle that venue is not waivable. *See Moreno*, 79 So. 3d at 511 (¶11). Consequently, we find that Dr. Azomani waived this issue when he declined to go forward with his motion, and waited to raise it for the first time on appeal.

¶10. Procedural bar notwithstanding, Dr. Azomani's claim lacks merit. As stated above, he relies on section 43-13-223(1) and argues that he could only be prosecuted in Madison County or the First Judicial District of Hinds County. Like all questions of law, we review issues of statutory construction de novo. *Coleman v. State*, 947 So. 2d 878, 880 (¶9) (Miss. 2006).

> [An appellate c]ourt's goal is to give effect to the intent of the Legislature. To determine that intent, this Court looks first to the language of the statute. If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction. Furthermore, words and phrases contained in a statute are to be given their common and ordinary meaning.

*Leg. of State v. Shipman*, 170 So. 3d 1211, 1218 (¶23) (Miss. 2015) (citations and quotation marks omitted). Additionally, an appellate court "may not enlarge or restrict a statute where the meaning of the statute is clear." *Gilmer v. State*, 955 So. 2d 829, 833 (¶9) (Miss. 2007).

¶11. Dr. Azomani was prosecuted under the Medicaid Fraud Control Act (MFCA). *See* Miss. Code Ann. §§ 43-13-201 to -233 (Rev. 2015). Along with potential criminal liability, the MFCA also provides for the possibility of civil penalties. Miss. Code Ann. § 43-13-225(1) (Rev. 2015). This is true even if the accused has not been prosecuted in a "criminal action." Miss. Code Ann. § 43-13-225(2) (Rev. 2015).

¶12. The question is whether the Legislature intended for section 43-13-223(1) to apply to both civil and criminal proceedings. We cannot determine the answer based on the plain language of the statute, which broadly refers to "[a]n action brought in connection with any matter under this article." However, the fact that it provides for jurisdiction in the county where the defendant resides suggests that it was intended to apply to civil actions. That correlates with the general concept that "[c]ivil actions . . . shall be commenced in the county where the defendant resides, . . . the county where a substantial alleged act or omission occurred[,] or where a substantial event that caused the injury occurred." Miss. Code. Ann. § 11-11-3(1)(a)(i) (Rev. 2004). And although section 43-13-223(1) states that an action "may be *prosecuted* to final judgment," that does not necessarily mean that it was intended to apply to criminal proceedings. That exact phrase appears in other statutes that relate solely to civil proceedings.[2]

_____

[2] *See* Miss. Code Ann. § 27-17-499 (Rev. 2013) (civil suits to collect privilege taxes); Miss. Code Ann. § 75-21-21 (Rev. 2009) (civil proceedings involving "parties to any trust

¶13. Additionally, "[w]hen one construction of a statute would endanger its constitutionality, it will be construed in harmony with the Constitution if, under the language of the statute, this may reasonably be done." *Bd. of Trs. of State Insts. of Higher Learning v. Ray*, 809 So. 2d 627, 636 (¶23) (Miss. 2002). As mentioned above, a defendant has a constitutional right to be tried in the county where the crime was committed. It would be contradictory to the Constitution to find that a defendant could be prosecuted in his resident county even if the crime had been committed in a different county. Accordingly, we find that section 43-13-223(1) applies only to civil actions under the MFCA. It follows that we find no merit to this issue.

## 2. Statute of Limitations

¶14. Next, Dr. Azomani argues that he was prosecuted beyond the statute of limitations. According to Dr. Azomani, Medicaid fraud must be prosecuted within two years of the underlying acts. Dr. Azomani was indicted for offenses that occurred on October 19, 2010, and January 3, 2011. He reasons that the State had until October 19, 2012, to prosecute him under Count I, and January 3, 2013, to prosecute him for Count II, so the January 13, 2014 indictment was beyond the statute of limitations. As in the previous issue, Dr. Azomani's argument is a matter of statutory interpretation, so we review the issue de novo. Furthermore, "[t]he de novo standard also applies to the application of a statute of

and combine"); Miss. Code Ann. § 81-12-53 (Rev. 2015) (civil proceedings involving a "converting [mutual] association"); Miss. Code Ann. § 81-14-111(d)(iii) (Rev. 2015) (civil proceedings involving "any merging savings bank"); Miss. Code Ann. § 91-7-273 (Rev. 2013) (civil actions "against an executor or administrator at the time [an] estate is reported insolvent").

limitations, which is a question of law." *Burch v. Ill. Cent. R.R.*, 136 So. 3d 1063, 1065 (¶3) (Miss. 2014).

¶15.    Mississippi Code Annotated section 99-1-5 (Rev. 2015) addresses the appropriate limitations period to prosecute criminal offenses.  Dr. Azomani is correct that section 99-1-5 does not specifically mention Medicaid fraud, the statute that prohibits it,[3] or the statute that makes it a criminal offense.[4]   According to section 99-1-5, "[a] person shall not be prosecuted for any other offense not listed in this section unless the prosecution . . . is commenced within two (2) years next after the commission thereof."

¶16.    But section 99-1-5 *does* state that "[t]he passage of time shall never bar prosecution against any person for the offense[] of . . . obtaining money or property under false pretenses or by fraud . . . ."  In *Hernandez v. State*, 137 So. 3d 889, 891 (¶9) (Miss. Ct. App. 2013), this Court found no merit to a claim "that while . . . rape is excluded from the two-year general statute of limitations, . . . statutory rape is not."  "Although statutory rape is not expressly included in the statute, it is within the definition of rape for purposes of the exceptions to the general two-year statute of limitations."  *Id*. at 892 (¶12).

¶17.    Similarly, Medicaid fraud is within the definition of "obtaining money or property under false pretenses or by fraud."  Miss. Code Ann. § 99-1-5.  There is no statute of limitations applicable to either of those offenses.  *Id*.  Accordingly, Medicaid fraud is not subject to the general two-year statute of limitations, and we find no merit to this issue.

---

[3] Miss. Code Ann. § 43-13-213 (Rev. 2015).

[4] Miss. Code Ann. § 43-13-215 (Rev. 2015).

### 3. Jury Instructions

¶18. Dr. Azomani claims that two jury instructions materially varied from the charges in the indictment. Both charges accused Dr. Azomani of making "false, fictitious[,] *and* fraudulent claims for Medicaid benefits." (Emphasis added). But according to jury instructions S-11 and S-12, the jury was directed to find Dr. Azomani guilty if he presented "false, fictitious[,] *or* fraudulent claims for Medicaid benefits . . . ." (Emphasis added).

¶19. Although Dr. Azomani objected to jury instructions S-11 and S-12 at trial, he only objected that the venue element was missing in each instruction. The State corrected the jury instructions, and the circuit court gave them as amended. Dr. Azomani never objected that jury instructions S-11 and S-12 included language that materially varied from the language in the indictment. Dr. Azomani is procedurally barred from raising this issue for the first time on appeal, because he objected solely on other grounds at trial. *See Walker v. State*, 671 So. 2d 581, 606 (Miss. 1995) ("The assignment is procedurally barred since [the] only stated objection to [a jury instruction] was on other grounds than [those] now claimed on this appeal."). Furthermore, the failure to object to a variance between an indictment and a jury instruction renders the issue procedurally barred on appeal. *Faulkner v. State*, 109 So. 3d 142, 146 (¶12) (Miss. Ct. App. 2013).

¶20. Even if this issue was not procedurally barred, the Mississippi Supreme Court has held:

> A statute often makes punishable the doing of one thing, or another, sometimes thus specifying a considerable number of things. Then, by proper and ordinary construction, a person who in one transaction does all violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of

10

the things.  Therefore the indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction "and" where the statute has "or," and . . . it will be established at the trial by proof of any one of them.

*Coleman v. State*, 94 Miss. 860, 48 So. 181, 182 (1909).  Fifty years later, the supreme court again held "that when two or more of the alternatives . . . are alleged in the indictment in the conjunctive, the accused may be found guilty if the proof established all or either of the alternatives."  *Lenoir v. State*, 237 Miss. 620, 625, 115 So. 2d 731, 733 (1959) (overruling cases holding "that when the indictment charges an accused with violating [a statute] by joining the alternatives with the conjunctive 'and[,]' the State thereby assumes the burden of proving all of the alternatives as charged in the indictment").  Much more recently, the supreme court reiterated the "general rule that where a statute denounces as an offense two or more distinctive acts, things, or transactions enumerated therein in the disjunctive, the whole may be charged conjunctively and the defendant found guilty of either one."  *Booker v. State*, 64 So. 3d 965, 971 (¶19) (Miss. 2011).  Consequently, we would find no merit to this issue even if it were not procedurally barred.

### 4.  Sufficiency of the Evidence

¶21.    According to Dr. Azomani, there was insufficient evidence to convict him of either charge.  "When reviewing the sufficiency of the evidence, [an appellate c]ourt . . . asks . . . whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Graham v. State*, 185 So. 3d 992, 998 (¶15) (Miss. 2016).  "If facts and inferences considered by the Court point in favor of the defendant on any element of the offense with

11

sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, [an appellate c]ourt must reverse and render." *Id*.

¶22.    Dr. Azomani was convicted of Counts I and II.  Count I alleged that Dr. Azomani

> did willfully, unlawfully[,] and feloniously make, present[,] and cause to be made and presented false, fictitious[,] and fraudulent claims for Medicaid benefits in the amount of $6,621.37, knowing the claim to be false[,] fictitious[,] and fraudulent, in that [he] represented that on or about October 19, 2010, he had provided pediatric medical care services to some fifty-six (56) Medicaid recipients[,] . . . representing that he had worked approximately 37.66 hours during the 24 hour period, knowing at the time the claims were submitted that he had billed a higher level of service than that performed . . . .

According to Count II, Dr. Azomani

> did willfully, unlawfully[,] and feloniously make, present[,] and cause to be made and presented false, fictitious[,] and fraudulent claims for Medicaid benefits in the amount of $8,094.39, knowing the claim to be false, fictitious[,] and fraudulent, in that [he] represented that on or about January 3, 2011, he had provided pediatric medical care services to some sixty-nine (69) Medicaid recipients[,] . . . representing that he had worked approximately 46 hours during the 24 hour period, knowing at the time the claims were submitted that he had billed a higher level of service than that performed . . . .

Dr. Azomani argues that there was no evidence that he "willfully, unlawfully, and feloniously" filed fraudulent claims for Medicaid benefits.

¶23.    First, Dr. Azomani claims that there was no evidence that he intended to file false or improper claims under code 99215, because he relied on the results of a 2007 partial audit of his files.  Gail Townsend, a nurse administrator with the Mississippi Department of Medicaid, reported three coding errors, but none of them were related to improper services under 99215.  In a response letter, Dr. Azomani stated that his uses of three improper codes were "honest mistakes."  According to Dr. Azomani, he relied on the 2007 audit and

12

continued to code the same way.

¶24. But that audit was the first one that Townsend ever performed. She testified that she had not been trained in coding prior to the 2007 audit, and she "was sent to a coding class two years" later. Otis Washington Jr., the program integrity director with the Mississippi Department of Medicaid, testified that the 2007 audit was not a full audit,[5] and "several mistakes were made." Officer David Delgado, an investigator with the MFCU, characterized the 2007 audit as a "very limited document review." And Sandra Newstein, an expert in CPT coding, described the 2007 audit as a nurse review. She further testified that Dr. Azomani had been coding 99215 claims wrong then, too.

¶25. During cross-examination, Washington admitted that Dr. Azomani had not been told that the 2007 audit was inaccurate, and he could have interpreted the 2007 audit as though he had been billing 99215 claims correctly. But on redirect, Washington testified that he would not agree that Dr. Azomani could keep billing improperly just because the 2007 audit had overlooked his previous incorrect coding. Washington also testified that Dr. Azomani was ultimately responsible for submitting properly coded bills to Medicaid. Townsend and Newstein both testified similarly. Viewed in the light most favorable to the State, the jury could have found that Dr. Azomani was ultimately responsible for billing under proper codes, regardless of the results of the 2007 partial review of his files.

¶26. Next, Dr. Azomani argues that the State failed to prove that he represented "that he had worked approximately 37.66 hours during" October 19, 2010, as charged in Count I.

_____

[5] Washington explained that a full audit would involve several other steps.

13

Relying on the unanimous testimony that the code 99215 *may* involve a forty-minute consultation, but it is not an absolute requirement, Dr. Azomani concludes that the State failed to prove every element charged in the indictment. He then raises a practically identical argument regarding Count II, and its charge that he represented that "he had worked approximately 46 hours" on January 3, 2011.

¶27. Dr. Azomani and the State stipulated "that both the State and defense experts in the areas of evaluation and management outpatient coding agree that all claims filed for [the two dates in the indictment] were not 99215 level services . . . ." According to the American Medical Association's "Evaluation and Management (E/M) Service Guidelines," code 99215 "requires at least 2 of these 3 key components: [a] comprehensive history; [a] comprehensive examination; [or] [m]edical decision making of high complexity." In the context of code 99215, "[h]igh complexity means a number of possible diagnoses and management options; amount and complexity of medical records; [and] the risk of significant complications, morbidity, and mortality." "Usually, the presenting problem(s) are of moderate to high severity."

¶28. The State called Dr. Robert Abney as an expert witness. Dr. Abney, a pediatrician, testified that he reviewed the medical records for the patients Dr. Azomani treated on October 19, 2010, and January 3, 2011. According to Dr. Abney, the children Dr. Azomani treated on those days were "only slightly ill to moderately ill," and "[s]ome weren't ill at all." He added that a number of them visited Dr. Azomani for a flu shot or a checkup. Dr. Abney further testified:

14

Of the children that came in that had very minor illnesses, they consisted of - - I'll just go through a few - - upper respiratory illness, eczema, allergic rhinitis, tinea, which is a mild skin abnormality, allergic rhinitis, viral syndrome, cough, viral syndrome again, seborrhea, allergic bronchitis.

There were a few sinusitises, some eczema, just headache, but there were several diagnoses made on a single child. None of which were complementary or none of which were complicating each other such that there was not . . . a pneumonia with a - - with an underlying asthmatic condition.

So the reason I'm going into that is that the - - that the degree of illness that these children had was very mild. There were a couple of three or four, maybe, that had fever. There were a few - - and there w[ere] several that antibiotics were prescribed as well as over-the-counter medicine for allergies, Zyrtec and so forth, which was all appropriate for the level of - - for the degree of illness that was there.

But I'm just trying to summarize this as saying that the level of illness was never to the point that - - where it would be alarming to the parent, I think. Certainly not alarming to the doctor.

Dr. Abney also noted that "[i]n all of the records, there were checkmarks on every organ system." He explained that examination of every organ system was not medically necessary.

¶29.    Dr. Abney also provided a hypothetical when code 99215 would be appropriate:

A four-year-old comes in your office [who]'s suddenly wheezing at home. [He is] blue. [He has] retractions, and you look - - you look. You're looking around, you're listening, and so forth.

And you happen to look in the back of [his] mouth, and there is a - - there is a marble down in there. And you reach back in there, and you get that marble out. And [he is] fine. And you didn't spend 40 minutes, but that's probably - - that could be a 99215.

Dr. Abney went on to testify that none of the records he reviewed "would . . . qualify for a 99215," whether by diagnosis or treatment. He further stated that it would be possible to provide 99215 services to a high number of patients in a day only "if all of them . . . had a

marble in their throat that you got out real fast and you didn't have any complications . . . but that's . . . never going to be the case." Dr. Azomani called Newstein as an expert witness in CPT coding. Newstein agreed that none of Dr. Azomani's claims on the two days at issue should have been billed as 99215 codes.

¶30. Because it was not necessary for Dr. Azomani to make highly complex medical decisions when he treated any of the 125 patients he saw on the two days at issue, he could have only believed that code 99215 was appropriate under the remaining two circumstances – a comprehensive history, and a comprehensive examination. Per the E/M Service Guidelines that would typically involve spending "40 minutes face-to-face with the patient and/or family." Even so, the E/M Service Guidelines provide that "the specific times expressed in the visit and descriptors are averages and, therefore, represent a range of times that may be higher or lower depending on actual clinical circumstances." By introducing the E/M Service Guidelines, the State presented evidence that Dr. Azomani represented that he spent an average of forty minutes consulting with the family of each patient. Although that time could have been more or less than forty minutes, it was an accurate interpretation of the code 99215 requirements. Jurors are not required "to agree upon a single means of commission [of a crime], any more than the indictments were required to specify one alone." *Schad v. Arizona*, 501 U.S. 624, 631 (1991).

¶31. Dr. Azomani cites *Henley v. State*, 136 So. 3d 413 (Miss. 2014), in support of his position that there was no evidence of his intent to file false or fraudulent claims. In *Henley*, the Mississippi Supreme Court held that the State presented evidence that an accused

16

possessed a number of tools, but there was insufficient evidence that he intended to use them to commit burglary. *Id*. at 418 (¶14). Because none of the tools had been adapted to be used for burglary, and there was no evidence that they had been or were about to be used to commit a burglary, the supreme court held that the jury could have only speculated regarding the accused's intent. *Id*. Consequently, the supreme court found that the circuit court should have granted a request for a peremptory instruction. *Id*. Dr. Azomani argues that the same is true here, because there was no evidence of his intent, except for his own testimony.

¶32.  This was undoubtedly a difficult case. But the jury could have found that there was no reasonable basis for Dr. Azomani to believe that he was filing proper claims under code 99215. The unanimous proof was that *none* of the claims at issue should have been under code 99215, because they did not involve highly complex medical decisions, and Dr. Azomani could not have possibly spent the requisite time consulting with parents of the children. "[A]ll the proof need not be direct[,] and the jury may draw any reasonable inferences from all the evidence in the case." *Williams v. State*, 122 So. 3d 105, 108 (¶17) (Miss. Ct. App. 2013). "Circumstantial evidence may also be used to prove intent." *Id*. The undisputed evidence was that Dr. Azomani consistently billed 99215 codes improperly, and such claims carried the highest level of reimbursement. Newstein agreed that Dr. Azomani never "shorted himself any money by" using the wrong code. "Credibility is a question of fact that must be decided by the jury." *Shinn v. State*, 179 So. 3d 1006, 1009 (¶8) (Miss. 2015). "[D]ecisions as to the weight and credibility of a witness's statement are the proper province of the jury, not the judge." *Id*. We are not called upon to substitute our view for

17

the jury's. Viewed in the light most favorable to the State, there was sufficient evidence for the jury to find Dr. Azomani guilty of both offenses.

### 5. Assistance of Counsel

¶33.   Dr. Azomani claims he received ineffective assistance from his trial counsel. An appellate court "generally declines to address claims of ineffective assistance of counsel on direct appeal, unless the issues are based on facts fully apparent from the record." *Id*. at 1009 (¶12). "This is because during direct appeals, the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately." *Id*.

¶34.   According to Dr. Azomani, his trial counsel rendered ineffective assistance based on the failure "to submit the appropriate jury instructions that did not substantially vary from the indictment." The record is insufficient to adequately address Dr. Azomani's claim. His trial counsel could have had ample reasons for not objecting to the disjunctive jury instructions. For example, Dr. Azomani's trial counsel could have concluded that the variance did not affect his defense strategy. *See Graham*, 185 So. 3d at 1000 (¶23). Or Dr. Azomani's trial counsel could have decided that an objection was unnecessary because a "false, fictional[,] or fraudulent" claim was not a material variance from a "false, fictional[,] and fraudulent" claim. *See Nix v. State*, 8 So. 3d 141, 145 (¶16) (Miss. 2009) ("A jury instruction's variance from the language of the indictment must be material to accurately categorize an instruction as error."). "False" and "fictional" are essentially synonyms. And a false representation is a necessary component of fraud. *State v. Bayer Corp.*, 32 So. 3d 496, 501 (¶18) (Miss.

2010). Or Dr. Azomani's trial counsel could have been aware of the supreme court's decision in *Booker*, 64 So. 3d at 971 (¶19), or the similar decisions that preceded it. In any event, this opinion should not be construed as an adjudication that such lines of reasoning were adequate to overcome any claim that Dr. Azomani received ineffective assistance of counsel. We merely mention them to explain why the record is inadequate to review the issue on direct appeal. If he chooses to do so, Dr. Azomani may argue the issue in a motion for post-conviction relief.

### 6. Cumulative Error

¶35. Finally, Azomani claims that this Court must reverse his convictions based on the cumulative effect of the circuit court's errors. Under the cumulative-error doctrine, "individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007). But if there are no individual errors, there can be no cumulative error that warrants reversal. *Id*. Because we have found no individual errors, we find no merit to this issue.

¶36. **THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF MEDICAID FRAUD AND SENTENCE OF TWO CONCURRENT TERMS OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE YEARS SUSPENDED, AND THREE YEARS OF PROBATION, AND TO PAY $14,715.76 IN RESTITUTION AND $44,147.28 IN CIVIL PENALTIES, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY JAMES, J.**

**CARLTON, J., DISSENTING:**

¶37.    I respectfully dissent from the majority's opinion.  I submit that error occurred in the jury instructions, which resulted in unconstitutionally lowering the State's burden of proof at trial.  The jury instructions at issue, instructions 11 and 12, specifically relieved the State from proving the indicted charge of Medicaid fraud, which required proof that Dr. Azomani intentionally and fraudulently committed a coding error when billing Medicaid after treating his patients.

¶38.    The indictment in counts I and II charged Dr. Azomani with submitting "false, fictitious[,] *and* fraudulent claims for Medicaid benefits." (Emphasis added).  However, jury instructions 11 and 12 only required the State to prove Dr. Azomani presented "false, fictitious[,] *or* fraudulent claims for Medicaid benefits." (Emphasis added).  This language materially deviates from the elements charged in the indictment and thus relieved the State from proving the specific fraudulent intent by Dr. Azomani when submitting the Medicaid claims.  This error in the jury was substantively prejudicial, particularly in light of Dr. Azomani's defense evidence that he possessed no fraudulent intent and that he relied on the results of a prior government Medicaid audit for his coding practices.

¶39.    I submit that the error in the jury instructions herein prevented Dr. Azomani from receiving a fair trial and constitutes plain error.  *See Rodgers v. State*, 166 So. 3d 537, 544 (¶15) (Miss. Ct. App. 2014).[6]  I would therefore reverse and remand for a new trial.  *See*

---

[6] In *Rodgers*, 166 So. 3d at 544 (¶15), this Court held:

Under the plain-error standard of review, we consider: (1) whether there was an error; (2) that adversely affected a defendant's substantive rights, causing

20

*Harrell v. State*, 134 So. 3d 266, 275 (¶30) (Miss. 2014) ("We hold that it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element.").

**JAMES, J., JOINS THIS OPINION.**

---

a manifest miscarriage of justice. For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity[,] or public reputation of judicial proceedings.

(Internal citations and quotation marks omitted).